Laura Carter Higley, Justice
Appellant Jose E. Duque appeals from an order denying relief that he requested in a post-conviction application for writ of habeas corpus.[1] In his sole issue, Appellant contends that he was entitled to the requested habeas relief because he received ineffective assistance of counsel at the time he pleaded guilty to the third-degree felony *139 offense of assault of a family member-impeding breathing.[2] Specifically, he complains that his plea counsel failed to provide accurate immigration advice during the plea proceeding, as required by Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), rendering his 2012 guilty plea involuntary.
On original submission, we affirmed the habeas court's order denying habeas relief. Ex parte Duque , No. 01-15-00014-CR, 2015 WL 5450530, at *9 (Tex. App.-Houston [1st Dist.] Sept. 15, 2015, pet. granted) (mem. op., not designated for pub.) ( Duque I ). The Court of Criminal Appeals granted Appellant's petition for discretionary review. Ex parte Duque , No. PD-1344-15, 2016 WL 1383854, at *1 (Tex. Crim. App. April 6, 2016) ( Duque II ). In so doing, the court recognized that we had issued our opinion in Duque I "without the benefit of [its] recent opinion in Ex parte Torres ," 483 S.W.3d 35 (Tex. Crim. App. 2016). The court vacated our judgment in Duque I , and remanded the case to us "to consider the effect of Torres , if any, on [our] reasoning and analysis in this case." Duque II , 2016 WL 1383854, at *1.
We affirm.
Background
Appellant, a Honduran national, came to the United States in 1997. He obtained lawful permanent resident status on March 19, 2011. One-and-one-half years later, on September 30, 2012, Houston Police Officer K. Truong was dispatched to the home of V. Cruz, following a 9-1-1 call. Cruz reported to Officer Truong that she and Appellant had an altercation regarding Appellant's payment of child support to her. She stated that, during the altercation, Appellant had put his hands around her neck and choked her. Based on the incident, Appellant was arrested and charged with the third-degree felony offense of assault of a family member-impeding breathing. See TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (West Supp. 2016).
Appellant entered into a plea bargain with the State. In exchange for Appellant's guilty plea, the State agreed to recommend a sentence of two years' deferred-adjudication community supervision and a $200 fine. Appellant was represented during the plea proceedings by attorney, R. Rodriguez. Although the record reflects that Appellant waived his right to have a court reporter transcribe the plea hearing, the record does reflect that, on October 8, 2012, in accordance with the State's recommendations, the trial court placed Appellant on two years deferred-adjudication community supervision and assessed a $200 fine against him.
In April 2013, the U.S. Department of Homeland Security (DHS) initiated proceedings to remove Appellant from the United States. DHS issued a "Notice to Appear," instructing Appellant to appear before an immigration judge. The notice stated that Appellant was a citizen of Honduras and that his "status was adjusted to lawful permanent resident on March 19, 2012." It recognized that, on October 8, 2012, Appellant had been convicted of assault of a family member-impeding breathing, an offense for which a sentence of one year or more may be imposed.[3] It further recognized that the offense was committed on September 30, 2012 against *140 V. Cruz, "a person who is protected from [Appellant's] acts by domestic or family violence laws."
The notice informed Appellant that he was "subject to removal from the United States" because he had been "convicted of a crime involving moral turpitude [third-degree felony assault of a family member] committed within five years after admission [to the United States] for which a sentence of one year or longer may be imposed" and because he was "an alien who at any time after entry has been convicted of a crime of domestic violence." See 8 U.S.C. § 1227(a)(2)(A)(i)(I), (a)(2)(E)(i) (2007). Appellant was not eligible to have his removal from the United States "canceled" by the Attorney General of the United States because he had not "been an alien lawfully admitted for permanent residence for not less than 5 years," nor had he "resided in the United States continuously for 7 years after having been admitted in any status." See 8 U.S.C. § 1229b(a) (2007).
Pursuant to the provisions in Code of Criminal Procedure Article 11.072, Appellant filed an application for a post-conviction writ of habeas corpus in which he asserted that his guilty plea had been involuntary because he had received ineffective assistance of counsel during the plea proceedings. Appellant requested the habeas court "[to] set aside his plea of guilty." Appellant alleged that his plea counsel had been ineffective because counsel had failed to advise him about the immigration consequences of his plea, as required by Padilla , 559 U.S. at 374, 130 S.Ct. at 1486.
Appellant offered his affidavit in support of the application. In his affidavit, Appellant averred that his plea counsel did not advise him that his removal from the United States was "virtually mandatory" as a result of his conviction. He stated that he had been "put in removal proceedings in the immigration court as a result of this conviction." He averred that he "found out during the removal proceedings in the immigration court that I was not eligible to apply for any realistic form of discretionary relief." Appellant testified that his plea counsel had "not explain[ed] to me the legal implications that my conviction was going to have on the different forms of discretionary relief that are available in removal proceedings." He stated, "[T]he immigration Judge ordered my removal on March 24th, 2014." Appellant concluded his affidavit by averring that, if he had known either that his guilty plea would make his deportation virtually mandatory or that he would not qualify for discretionary relief, he would not have pleaded guilty but instead would have insisted on going to trial.
Appellant also offered the affidavit from his plea counsel, R. Rodriguez, in support of his habeas application. In his affidavit, Rodriguez stated that, during the plea process, he did not inform Appellant that he was subject to "automatic deportation" if he pleaded guilty to assault of a family member-impeding breathing. Rodriguez averred that the reason he had not informed Appellant of this information was because he had not been aware at the time of the plea that assault of a family member-impeding breathing was considered a crime involving moral turpitude and that, if convicted, Appellant would be automatically deported. Rodriguez stated that he also had not known that a conviction for domestic violence would subject Appellant to automatic deportation. Rodriguez testified that he did not inform Appellant that a conviction of a crime involving moral turpitude "within the seven (7) year period after admission would prevent a 'Legal Permanent Resident' to apply for 'Cancellation of Removal and Adjustment of Status' during removal proceedings" because *141 he had also not been aware of that information.
The habeas court conducted a hearing on Appellant's habeas application. At the hearing, Appellant presented the testimony of an immigration law expert. The expert testified that, given the nature of his conviction and the period of time that he had been a permanent legal resident, the only avenue for Appellant to remain in the United States would be to prove "exceptional and extremely unusual hardships to [Appellant] and [his] family," a "virtually impossible" standard to meet.
Appellant also offered the testimony of his plea counsel, Rodriguez, at the hearing. Rodriguez stated that he had been appointed to represent Appellant in the underlying case. On the day of the plea proceedings, Rodriguez met with Appellant in the "holdover cell" next to the courtroom. Rodriguez testified that the meeting was "fairly lengthy," lasting 30 minutes to one hour. During the meeting, Rodriguez reviewed the facts of the case with Appellant. After speaking with the prosecutor, Rodriguez informed Appellant that the State would recommend "a two-year deferred adjudication probation if he were to decide to plea." Rodriguez told Appellant that he had "an option to go to trial" or he could plead guilty in exchange for the punishment the State was offering. Rodriguez stated, "[Appellant] decided to go ahead and plead and accept the two-year deferred adjudication probation."
Rodriguez confirmed that he did not advise Appellant that "the crime to which he was pleading guilty was considered for immigration purposes a crime involving moral turpitude" because he was not aware of that information. Rodriguez also confirmed that, because he lacked knowledge about the issue, he did not inform Appellant that he would be placed into removal proceedings as a result of pleading guilty. Rodriguez testified that, if he had known that removal proceedings would be initiated against Appellant as a result of his guilty plea, he "would have advised [Appellant] that he probably would consider going to trial on this case.... I would not have given him advice of taking a two-year deferred adjudication probation."
Rodriguez testified that his representation of Appellant was not "ineffective in terms of my representation on the charge that he had"; however, "looking back, not informing [Appellant] of the specific consequences of his plea, because I was unaware of the crime being a crime of moral turpitude and that he would be put in automatic proceedings, that could be considered ineffective." On cross-examination, Rodriguez agreed that he had told Appellant that "he could be deported."
During Rodriguez's testimony, the habeas judge recalled that during the plea proceedings she had inquired whether Appellant was a permanent resident and had then informed Appellant that he could be deported. Rodriguez confirmed that the judge had informed Appellant, during the plea proceedings, that he could be deported. The habeas judge further noted that she had written on Appellant's plea papers as follows: "Per attorney, [defendant] is permanent resident. Defendant understands he could be deported."
Appellant also testified at the hearing through a Spanish interpreter. Appellant stated that he was residing in the county jail, and before being brought there, had been in an immigration detention facility. Appellant testified that he was 35 years old and had been in the United States for 17 years. He confirmed that, other than the offense involved in this case, he had never been convicted of a crime.
*142 Appellant testified that he has a wife and four children. He asked the habeas court "[to] allow me a second opportunity because my children are minors and they do need me because my wife does not work."
On cross-examination, Appellant acknowledged that his plea counsel, Rodriguez, had informed him that, if he pleaded guilty, he could be deported. However, Appellant indicated that Rodriguez had not told him that immigration authorities would arrest him and initiate deportation procedures.
The State presented the testimony of the police officer, K. Truong, who responded to the 9-1-1 call made regarding Appellant's assault on the complainant, V. Cruz. Officer Truong testified that, when he arrived at the scene, he spoke to Cruz. He described her as being "terrified." Cruz indicated to Officer Truong that she and Appellant had an altercation because Appellant wanted to stop paying child support. She reported that Appellant had choked her. She said that she tried to call 9-1-1, but Appellant had grabbed her phone. She was able to push Appellant away and leave the house.
Officer Truong also testified that Cruz's eight-year-old son was also at the scene. He stated that the child was crying, afraid, and clinging to his mother. The child corroborated his mother's story, telling Officer Truong that his father, Appellant, had put his hands around his mother's neck. He said that Appellant grabbed his mother's cell phone, but she was able to push him away, and run out of the house.
Officer Truong also testified that he saw "very visible" markings on Cruz's neck. He stated that Appellant was "upset" and "drunk" when he arrested him that day.
The State also offered the testimony of the assistant district attorney, T. Ballengee, the prosecutor at Appellant's plea proceedings. Ballengee testified that he reviewed the file and saw that he had written "on the file that Padilla warnings were given." He stated, "The only time that I would write Padilla warnings were given [in the trial court] was if it was specifically stated in the plea that the defendant would, in fact, be deported, not that they may [be deported]." Ballengee recalled that, at the time of the plea, he had thought it was odd for Appellant to take deferred adjudication when "we were telling him that he was going to be deported."
Finally, Ballengee testified that the complainant, Cruz, was cooperative with the prosecution. And he stated that Cruz had "requested probation for [Appellant] and treatment."
At the end of the hearing, the habeas court indicated that it was denying Appellant's requested habeas relief. The court later signed an order denying Appellant's "application for writ of habeas corpus." The habeas court adopted the State's proposed findings of fact and conclusions of law, which included a statement that, in making the findings of fact and conclusions of law, the court had "considered the application for writ of habeas corpus, the affidavits attached to the application, the evidence presented at the writ hearing, and official court records in the above-captioned cause."
The habeas court's findings of fact included the following:
1. The Court finds that the applicant was convicted on October 8, 2012, out of the 184th District Court, Harris County, Texas, in cause number 1363049, where the applicant entered a plea of guilty to the third degree felony offense of Assault-Family Member/Impeding Breath. However, the Court withheld a finding of guilt and the applicant *143 was sentenced to a 2 year Deferred Adjudication and a $200.00 fine....
....
8. The Court finds, based on the application, that the applicant is a legal permanent resident in the United States.
9. The Court finds based on the court reporter's record that the applicant was properly admonished and informed of the potential immigration consequences of his plea consistent with TEX. CODE CRIM. PROC. Art. 26.13.
10. The Court finds, based on the clerk's record, that on the face of the applicant's plea agreement with the State that he was admonished:
"by the Court and the defense attorney that if he is in the USA illegally or is not a US citizen, he/she may be deported back to his/her country. The defendant also acknowledged in open court that neither their attorney nor anyone else has indicated or promised otherwise."[4]
11. The Court finds that the applicant was represented by Mr. R[.] Rodriguez ("Rodriguez") in his primary case.
12. The Court finds that the testimony offered by the applicant's previous attorney, R[.] Rodriguez, was credible.
13. The Court finds based on the credible testimony of Rodriguez, that Rodriguez was aware that the applicant was not a United States citizen.
14. The Court finds based on the Court reporter's record of Rodriguez [sic] that Rodriguez informed the applicant that a conviction could result in the applicant's potential deportation from the country.
15. The Court finds based on the Court reporter's record of [the writ hearing] that while taking the applicant's plea the Court confirmed that Rodriguez had informed the applicant that he could be deported based upon the plea....
16. The Court finds that the testimony from Harris County Assistant District Attorney, Tim Ballengee, [is] credible.
17. The Court finds, based on the Court reporter's record, that the testimony of Tim Ballengee referring to admonishments and immigration consequences given at the time the applicant took his plea [is] credible.
18. The Court finds that the testimony given by Officer K. Truong, referring to the strength of the State's case against the applicant [is] credible.
19. The Court finds, based on the totality of the evidence presented, assertions made, and the testimony given that the applicant was not credible.[5]
*144 20. The Court finds the applicant's assertion that he would not have pled guilty but for the alleged deficient conduct but would have insisted on going to trial is not credible.
21. The Court finds that the applicant's plea was voluntary.
22. The Court finds that the assertion made by applicant that he was automatically deported following his voluntary plea, [is] not credible.
23. The Court finds that the applicant entered his plea agreement on October 8, 2012.
24. The Court finds that deportation proceedings were not initiated until April 22, 2013....
25. The Court finds based on the Court reporter's record, and consistent with the Court's previous ruling, the applicant's writ is denied.
Based on the findings, the habeas court made the following conclusions of law:
1. The applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington , 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; Hernandez v. State , 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the Strickland standard in Texas); and Narvaiz v. State , 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part Strickland standard).
2. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.
3. The applicant fails to show that his initial guilty plea was unlawfully induced, made involuntarily, or made without an understanding of the nature of the charge against him and the consequences of his plea.
4. The applicant fails to overcome the presumption that his initial guilty plea was knowingly and voluntarily made. Wilson v. State , 716 S.W.2d 953, 956 (Tex. Crim. App. 1986) ; Fuentes v. State , 688 S.W.2d 542, 544 (Tex. Crim. App. 1985).
5. In all things, the applicant has failed to demonstrate that his conviction was improperly obtained.
*145 Appellant appealed, asserting in one issue that the habeas court abused its discretion when it denied his requested habeas relief. On original submission, we affirmed the habeas court's order. Duque I , 2015 WL 5450530, at *9. Appellant then filed a petition for discretionary review with the Court of Criminal Appeals. Noting that we did not have the benefit of its "recent opinion in Ex parte Torres ," the Court of Criminal Appeals granted the petition for discretionary review, vacated our judgment, and remanded the case to us "to consider the effect of Torres , if any, on [our] reasoning and analysis in this case." Duque II , 2016 WL 1383854, at *1.
Entitlement to Habeas Corpus Relief
In his sole issue, Appellant contends that the habeas court abused its discretion when it denied the relief he requested in his habeas application to set aside his guilty plea. Appellant asserts that his guilty plea was involuntary because his plea counsel, Rodriguez, rendered ineffective assistance of counsel by failing to advise Appellant of the immigration consequences of his 2012 guilty plea, as required in Padilla , 559 U.S. at 374, 130 S.Ct. at 1486.
A. Standard of Review
When reviewing the trial court's ruling on a habeas corpus application, we view the facts in the light most favorable to the trial court's ruling and will uphold it absent an abuse of discretion. See Kniatt v. State , 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." Bigon v. State , 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).
When, as here, an applicant seeks relief under Article 11.072 from an order that orders community supervision, "the trial judge is the sole finder of fact." See Torres , 483 S.W.3d at 43 (citing State v. Guerrero , 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) ). In habeas proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." Ex parte Mowbray , 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). Accordingly, we must afford almost total deference to the habeas court's findings of fact when those findings are supported by the record. See Torres , 483 S.W.3d at 43. "We similarly defer to any implied findings and conclusions supported by the record." Ex parte Harrington , 310 S.W.3d 452, 456 (Tex. Crim. App. 2010). However, we review de novo mixed questions of law and fact that do not depend upon credibility and demeanor. Ex parte Zantos-Cuebas , 429 S.W.3d 83, 87 (Tex. App.-Houston [1st Dist.] 2014, no pet.).
B. Legal Principles: Ineffective Assistance of Counsel
To demonstrate entitlement to post-conviction habeas relief on the basis of ineffective assistance of counsel, an applicant must prove by a preponderance of the evidence both (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors. See Torres , 483 S.W.3d at 43 (citing Strickland v. Washington , 466 U.S. 668, 687, 693, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984) ). The Sixth Amendment guarantees a defendant the effective assistance of counsel at "critical stages of a criminal proceeding," including when he enters a guilty plea. Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1963, 198 L.Ed.2d 476 (2017) (quoting Lafler v. Cooper , 566 U.S. 156, 165, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012) ).
*146 In Padilla , the United States Supreme Court recognized that an attorney's failure to give accurate advice to a non-citizen client regarding his potential for deportation following a guilty plea may constitute ineffective assistance. See Padilla , 559 U.S. at 366, 130 S.Ct. at 1482 ("We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel."); see also Lee , 137 S.Ct. at 1969 (determining attorney's incorrect advice regarding deportation consequence of his client's guilty plea constituted ineffective assistance of counsel). Regarding the first Strickland prong, the Padilla court noted that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation.... [A]uthorities of every stripe ... universally require defense attorneys to advise as to the risk of deportation consequences for non-citizen clients." Padilla , 559 U.S. at 367, 130 S.Ct. at 1482 (internal quotation omitted).
When the deportation consequences of a plea are "not succinct and straightforward," counsel should advise his client of the possibility that a guilty plea may carry a risk of adverse immigration consequences. Id. at 369, 130 S.Ct. at 1483 ; accord Torres , 483 S.W.3d at 44. However, when federal law clearly requires deportation following a guilty plea, counsel has a duty to correctly advise his client about the deportation consequences of the plea. See Padilla , 559 U.S. at 369, 374, 130 S.Ct. at 1483, 1486 ("[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation."); Torres , 483 S.W.3d at 44. A failure by counsel to affirmatively and correctly advise a defendant regarding the clear deportation consequences of his plea will render counsel's performance constitutionally deficient, thereby satisfying the first Strickland prong. See Padilla , 559 U.S. at 369, 374, 130 S.Ct. at 1483, 1486.
Regarding the second Strickland prong, the Torres court addressed the proper standard to determine whether counsel's constitutionally deficient performance prejudiced a habeas applicant in the context of a collateral challenge to a guilty plea based on ineffective assistance of counsel. See Torres , 483 S.W.3d at 46. The court held the proper standard for this determination is the one set out by the Supreme Court in Hill v. Lockhart , 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).
The Hill standard "requires an applicant to show a reasonable probability that counsel's errors affected the outcome of the plea proceedings, in the sense that, but for counsel's errors, the applicant would have rejected the plea bargain and instead pursued a trial." Torres , 483 S.W.3d at 47 (citing Hill , 474 U.S. at 59, 106 S.Ct. at 370 ). As part of this prejudice standard, "an applicant who demonstrates deficient performance would not automatically be entitled to relief, but instead would be required to 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " Id. at 48 (quoting Padilla , 559 U.S. at 372, 130 S.Ct. at 1485 ). Factors to consider in conducting this analysis include "the evidence supporting an applicant's assertions, the likelihood of his success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments." Id. (citing United States v. Kayode , 777 F.3d 719, 725 (5th Cir. 2014) ).
The Torres court cautioned that, "to show that a decision to reject the plea bargain would have been rational under the circumstances, it is not dispositive that *147 an applicant show that he would have received a more favorable disposition had he gone to trial." Id. "[A]s Padilla recognized, 'an alien defendant might rationally be more concerned with removal than with a term of imprisonment.' " Id. (quoting United States v. Orocio , 645 F.3d 630, 643 (3d Cir. 2011) ). "Thus, where the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice." Id. at 48-49. This precept was confirmed by Supreme Court's recent holding in Lee . There, Lee, a lawful permanent resident of the United States, was indicted on a drug offense. Lee , 137 S.Ct. at 1963. The Government offered Lee a plea deal with a lower sentence than he faced at trial. Id. Lee's attorney advised him to take the plea deal because he believed that Lee's defense was weak and that going to trial was "very risky." Id.
Throughout the plea negotiations, Lee expressed his concern to his attorney about being deported as a result of pleading guilty. Id. Lee's attorney repeatedly assured Lee that he would not be deported if he pleaded guilty. Id. When Lee pleaded guilty, the trial court admonished him that he could be deported; however, Lee's attorney again assured him that the admonishment did not apply to him. Id. at 1968. But Lee's attorney was wrong. Id. at 1962. After pleading guilty and being sentenced to one year and one day in prison, Lee learned that his drug conviction subjected him to mandatory deportation. Id.
Lee appealed. The Government conceded that "plea-stage counsel provided inadequate representation when he assured Lee that he would not be deported if he pleaded guilty." Id. at 1964. However, the Government also asserted that Lee did not show that he was prejudiced by the erroneous advice as required by the second Strickland prong. Id. at 1966. It pointed out that, with no viable defense, had he gone to trial, Lee likely would have been convicted, given a longer prison sentence, and then still deported. Id.
The Supreme Court declined to adopt a per se rule that a defendant with no viable defense cannot show prejudice from the denial of his right to trial. See ids="12605079" index="76" url="https://cite.case.law/s-ct/137/1958/#p1963">id. Instead, the Lee court utilized the Hill standard to determine whether Lee was prejudiced by his counsel's incorrect advice regarding the deportation consequences of his guilty plea. Id. at 1965. The Supreme Court explained,
As we held in Hill v. Lockhart , when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."
Id.
The Court concluded, "[i]n the unusual circumstances of this case," Lee had "adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation." Id. at 1967. It could not agree "that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial." Id. at 1968. The Court cited evidence that deportation was a determinative issue for Lee during the plea discussions, and Lee had ties "to this country and no other." Id. at 1969. It also stated that "the consequences of [Lee] taking a chance at trial [and possibly avoiding deportation] were not markedly harsher than pleading [guilty]," noting that Appellant risked only "a year or two more of prison time" by going to trial. Id. In its *148 concluding remarks, the Court stated, "Lee's claim that he would not have accepted a plea had he known it would lead to deportation is backed by substantial and uncontroverted evidence." Reversing his conviction, the Supreme Court held that Lee had "demonstrated a 'reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Id. (quoting Hill , 474 U.S. at 59, 106 S.Ct. at 370 ).
C. Analysis
Here, Appellant asserts that the performance of plea counsel, Rodriguez, was deficient because Rodriguez advised him that he may be deported if he pleaded guilty when, in fact, federal immigration law made Appellant's deportation virtually mandatory. However, even if we agree that Rodriguez's performance was deficient for this reason, Appellant was still required to show on appeal that the record does not support the habeas court's implied conclusion that Appellant failed to prove that he was prejudiced as a result of counsel's deficient performance. See Strickland , 466 U.S. at 693, 104 S.Ct. at 2064, 2068. To establish prejudice, Appellant was required to meet the prejudice standard found in Hill ; that is, he was required to show a reasonable probability that, but for Rodriguez's erroneous immigration advice, he would have rejected the plea bargain and instead gone to trial.[6] See Torres , 483 S.W.3d at 47 (citing Hill , 474 U.S. at 59, 106 S.Ct. at 370 ); see also Lee , 137 S.Ct. at 1965. As part of proving this prejudice standard, Appellant was required to convince the habeas court that a decision to reject the plea bargain would have been rational under the circumstances. See Torres , 483 S.W.3d at 48 (quoting Padilla , 559 U.S. at 372, 130 S.Ct. at 1485 ). The Torres court held that factors to consider in conducting the Hill prejudice-prong analysis include the following: the evidence supporting Appellant's assertions, the likelihood of his success at trial, the risks he would have faced at trial, the benefits he received from the plea bargain, and the trial court's plea admonishments. See id. at 47.
On appeal, Appellant points to his habeas affidavit in which he testified that, if he had known "the offense to which I was pleading guilty would make my deportation virtually mandatory or that I would not qualify for any form of discretionary relief during the removal proceedings, I would have never pleaded guilty in the instant case. I would have insisted on going to trial." Appellant also points to Rodriguez's testimony in which the attorney indicated that, had he known the guilty plea would result in Appellant's deportation, "I would have advised him that he probably would consider going to trial on this case. So, had I known that that was going to happen, I would not have given him advice of taking a two-year deferred adjudication probation."
*149 "Surmounting Strickland 's high bar is never an easy task [,] and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee , 137 S.Ct. at 1967 (internal citation and quotation marks omitted). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id.
We are cognizant that the Supreme Court has "recognized that 'preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.' " Padilla , 559 U.S. at 368, 130 S.Ct. at 1483 (quoting INS v. St. Cyr , 533 U.S. 289, 322, 121 S.Ct. 2271, 2291, 150 L.Ed.2d 347 (2001) ). However, here, in addition to the habeas court's finding that Appellant was not credible, Appellant offered sparse contemporaneous evidence to support his claim that he would not have pleaded guilty had he known that his deportation was mandatory. In contrast to the defendant in Lee , noticeably absent here was any evidence tending to show that, during plea discussions, Appellant was concerned with the immigration consequences of a conviction rather than being concerned with jail time. Cf. Lee , 137 S.Ct. at 1967 (stating that deportation was the "determinative issue" for Lee during the plea discussions); see also Torres , 483 S.W.3d at 49 (noting that Torres's statements in his affidavits "make no mention of any special concern for potential immigration consequences, instead appearing to focus on a desire to avoid conviction and jail time").
Also, it is notable that, while the admonishments he received regarding deportation failed to warn him that deportation was mandatory, the record shows that Appellant was warned by Rodriguez and by the trial court that deportation was a possibility. See Torres , 483 S.W.3d at 48 (listing "the trial court's admonishments" as factor to consider in determining prejudice under Hill standard); see also Kayode , 777 F.3d at 728-29 ("Warnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel, and therefore have no bearing on the first Strickland prong. However, while judicial admonishments are not a substitute for effective assistance of counsel, they are relevant under the second Strickland prong in determining whether a defendant was prejudiced by counsel's error.").[7] Even though the specter of deportation was raised by the admonishments given by the trial court and by counsel, nothing indicates that deportation was a paramount concern to Appellant over avoiding incarceration.
*150 Appellant asserts that he demonstrated it would have been rationale for him to reject the plea bargain under the circumstances and go to trial. Appellant points to his testimony in the habeas proceeding, indicating that he has strong ties to the United States. Specifically, he points to testimony showing that he had been in the United States for 17 years, he had obtained lawful permanent resident status three years earlier, and his wife and four minor children are United States citizens. With respect to his wife and children, Appellant testified, "I have my wife; and I have four children. And this is the reason why I'm fighting, allow me a second opportunity because my children are minors and they do need me because my wife does not work."
The punishment for assault of a family member-impeding breathing, a third-degree felony, is imprisonment for a term of not less than two years or more than ten years and a fine of up to $10,000. See TEX. PEN. CODE ANN. § 12.34 (West 2017), § 22.01(b)(2)(B). From Appellant's testimony, indicating that he was concerned about being able to work to support his family, the habeas court could have reasonably inferred that imprisonment may have been as great a concern to Appellant as deportation.
We are mindful that significant familial ties to the United States could cause a rational defendant to risk trial and refuse a plea that would result in deportation. See Kayode , 777 F.3d at 727 ; see also Torres , 483 S.W.3d at 50 ("[W]e observe, as the court of appeals did, that appellant had strong ties to this country that could, at least in theory, cause a rational individual to roll the dice and pursue a trial."). Although connections to this country, such as familial ties and long-time U.S. residency, are indicators that it would be reasonable for a defendant like Appellant to risk going to trial rather than facing deportation, these facts alone do not necessarily establish prejudice. See Kayode , 777 F.3d at 727 (holding that defendant had not established prejudice even though had familial ties in U.S.); see also Torres , 483 S.W.3d at 50 (viewing totality of the record and deferring to habeas court's factual findings, Court of Criminal Appeals concluded that habeas court could have determined Torres did not establish prejudice prong even though Torres had strong ties to U.S.); cf. Lee , 137 S.Ct. at 1968-69 (taking into consideration Lee's strong connection to U.S. as one of several factors supporting its holding that Lee had established Hill prejudice).
Appellant also indicates that it would have been rational for him to reject the plea bargain because he could have secured a more favorable plea agreement than the one that he received had he been informed that he would be subject to mandatory deportation. More precisely, he claims that he could have negotiated a plea deal whereby he would have pleaded guilty to a lesser-included offense for which he would not have been subject to deportation. Appellant further asserts that he would not have agreed to deferred adjudication had he known it he would result in his deportation. However, the record lacks any evidence showing that alternative plea agreements were available to Appellant or were viable options; nor does Appellant show that the State was agreeable to any other plea bargain than the one that was reached. See Torres , 483 S.W.3d at 48 (listing "evidence supporting an applicant's assertions" as factor to consider in prejudice analysis). Thus, as it relates to this line of argument, the record does not provide support for Appellant's contention that there was a reasonable probability that, but for counsel's erroneous advice, he would have pursued a trial or otherwise would have received some other more favorable *151 outcome in the plea proceeding. See ids="6809032" index="112" url="https://cite.case.law/sw3d/483/35/">id. at 50.
Finally, Appellant claims on appeal that whether he would have been successful at trial is not relevant to the prejudice determination here because his attorney did not discuss the strength of the State's case with him. He points out that he met his attorney, Rodriguez, on the day he pleaded guilty in a holdover cell near the courtroom. The record shows that Appellant and Rodriguez met there for 30 minutes to one hour immediately before the plea proceedings. Appellant is correct in indicating that the record does not contain direct evidence showing whether Appellant knew the strength of the State's case at that time. And, if he did, the record does not show whether Appellant considered such information in entering into the plea bargain. However, at the habeas hearing, Rodriguez testified that he was "given the file that the State had that contained the offense report of what [Appellant] was being charged with. I went over the facts of that with [Appellant]. I had a conversation with him about it." From this, the habeas court could have reasonably inferred that Rodriguez reviewed responding police officer Truong's offense report with Appellant before the plea proceeding.
At the habeas hearing, Officer Truong testified what he had observed when he arrived at the scene. He stated that he spoke to V. Cruz, who he described as being "terrified." Cruz indicated to Officer Truong that she and Appellant had an altercation because Appellant wanted to stop paying child support. She reported that Appellant had choked her.
Officer Truong also testified that Cruz's eight-year-old son was crying, afraid, and clinging to his mother. The child corroborated his mother's story. He told Officer Truong that his father, Appellant, had put his hands around his mother's neck. Officer Truong observed "very visible" markings on Cruz's neck. Assistant district attorney Ballengee also testified that Cruz was cooperative with the prosecution.
We are mindful that "to show that a decision to reject the plea bargain would have been rational under the circumstances, it is not dispositive that [Appellant] show that he would have received a more favorable disposition had he gone to trial." Id. However, the "potential strength of the state's case must inform [the prejudice] analysis, inasmuch as a reasonable defendant would surely take it into account." United States v. Akinsade , 686 F.3d 248, 255 (4th Cir. 2012) (citation omitted); see also Torres , 483 S.W.3d at 48 (identifying "the likelihood of his success at trial [and] the risks the [habeas] applicant would have faced at trial" as factors to consider in Hill prejudice analysis). If found guilty, Appellant faced up to 10 years in prison and a $10,000 fine. Cf. Lee , 137 S.Ct. at 1969 (noting that Lee only faced one or two more years in prison if he had rejected plea). The plea bargain here allowed Appellant to entirely avoid jail time, including a possible 10-year prison sentence. See Torres , 483 S.W.3d at 48 (listing "the benefits received from the plea bargain" as factor to consider); id. at 50 (recognizing that plea bargain allowed Torres to avoid jail time, including possible 10 and 20 year sentences).
Unlike in Lee , here, the record did not contain "substantial and uncontroverted evidence" that Appellant would have not have accepted the plea had he known that he would be deported. See Lee , 137 S.Ct. at 1969. Given the totality of the circumstances, and the habeas court's credibility assessments, the record supports the habeas court's implied finding that Appellant failed to show that a decision "to reject the plea bargain would have been 'rational under the circumstances.' "
*152 Torres , 483 S.W.3d at 48 (quoting Padilla , 559 U.S. at 372, 130 S.Ct. at 1485 ); see id. at 46 (holding that "the court of appeals erred by failing to defer to the habeas court's implicit fact findings that appellant's claims lacked credibility and that appellant failed to plead or prove that, under the circumstances, he would have rejected the plea bargain and proceeded to trial had he been properly advised, or that it would have been rational for him to do so"). The record further supports an implied finding that Appellant had not demonstrated a "reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[8] Hill , 474 U.S. at 59, 106 S.Ct. at 370 ; see Torres , 483 S.W.3d at 46. That is, the record supports a determination that Appellant was not prejudiced by his counsel's deficient performance. We hold that it was within the habeas court's discretion to deny Appellant's requested habeas relief.
We overrule Appellant's sole issue.
Conclusion
We affirm the order of the habeas court denying Appellant's requested habeas relief.

See Tex. Code Crim. Proc. Ann. art. 11.072 (West 2015) (setting forth "the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision"); ids="6809032" index="126" url="https://cite.case.law/sw3d/483/35/">id. art. 11.072 § 8 (permitting appeal from denial of habeas application).

See Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B) (West Supp. 2016).

Deferred adjudication is considered to be a conviction under federal immigration law. See 8 U.S.C.A. § 1101(a)(48)(A) (2005) ; Moosa v. INS , 171 F.3d 994, 1005-06 (5th Cir. 1999) (recognizing that assessment of deferred adjudication in Texas constitutes conviction for immigration purposes).

The record contains the general admonishments given to Appellant during the plea proceedings, which include the following: "[I]f you are not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense with which you are charged in this case may result in your deportation, or your exclusion from admission to this country, or your denial of naturalization under Federal law." Appellant initialed the admonishment, indicating that he understood it.

When a trial court makes explicit credibility findings, we must give deference to those credibility determinations. See State v. Sheppard , 271 S.W.3d 281, 286 (Tex. Crim. App. 2008). A trial court acting as the sole fact finder may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. State v. Ross , 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Here, the habeas court explicitly found Appellant was not credible and found that his plea counsel, Rodriguez, was credible. These credibility findings are reconcilable because there was not great overlap between Appellant's and Rodriguez's testimony. However, we note one common area of testimony: whether Appellant was informed of the immigration consequences of his guilty plea. Appellant and Rodriguez each testified that Rodriguez informed Appellant that he may be deported if he pleaded guilty but did not inform Appellant that his deportation was mandatory. At the habeas hearing, the judge indicated that she had also presided at the plea proceedings. She noted that she had written on the plea papers that Appellant had been informed that he may be deported. As Appellant and Rodriguez had testified, the judge acknowledged that Appellant had not been informed that his deportation would be mandatory following a guilty plea. Thus, it appears that the habeas court's findings regarding the respective credibility of Appellant and Rodriguez are pertinent to factual issues other than whether Appellant was informed of the immigration consequences of his plea, such as Appellant's claim that he would not have pleaded guilty had he known he would be deported, Appellant's testimony about when deportation proceedings were initiated against him, and Rodriguez's testimony regarding his meeting with Appellant before the guilty plea.

The habeas court expressly found that Appellant's "assertion that he would not have pled guilty but for the alleged deficient conduct but would have insisted on going to trial is not credible." In addition to express findings, we must give deference to the habeas court's implied fact findings and conclusions supported by the record, including the habeas court's implicit finding that Appellant failed to prove that it would have been rational, under the circumstances, for him to have rejected the plea bargain and gone to trial. See Ex parte Torres , 483 S.W.3d 35, 46 (Tex. Crim. App. 2016) (concluding that "the court of appeals erred by failing to defer to the habeas court's implicit fact findings that appellant's claims lacked credibility and that appellant failed to plead or prove that, under the circumstances, he would have rejected the plea bargain and proceeded to trial had he been properly advised, or that it would have been rational for him to do so").

In a footnote, the Lee court recognized, "Several courts have noted that a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced by his attorney's misadvice." Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1968 n.4, 198 L.Ed.2d 476 (2017) (citing United States v. Newman , 805 F.3d 1143, 1147 (D.C.Cir. 2015) ; United States v. Kayode , 777 F.3d 719, 728-729 (5th Cir. 2014) ; United States v. Akinsade , 686 F.3d 248, 253 (4th Cir. 2012) ; Boyd v. Yukins , 99 Fed.Appx. 699, 705 (C.A.6 2004)). The Court then distinguished the Lee case observing,
The present case involves a claim of ineffectiveness of counsel extending to advice specifically undermining the judge's warnings themselves, which the defendant contemporaneously stated on the record he did not understand. There has been no suggestion here that the sentencing judge's statements at the plea colloquy cured any prejudice from the erroneous advice of Lee's counsel.
Id.

As mentioned, the habeas court made an express fact finding that Appellant's "assertion that he would not have pled guilty but for the alleged deficient conduct but would have insisted on going to trial is not credible."