Ronnie D. FISHER, d/b/a Luckie's
Bonding Service, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-91-547-CR.

Court of Appeals of Texas,
Corpus Christi.

May 28, 1992.

Rehearing Overruled July 30, 1992.

Manuel Marroquin, Corpus Christi, for appellant.

Carlos Valdez, County Atty., Walter D. Bryan, Asst. County Atty., Corpus Christi, for appellee.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr. and GILBERTO HINOJOSA, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

The State of Texas sued Ronnie D. Fisher, d/b/a Luckie's Bonding Service, and Hank William Flippo to recover a $500 bail bond which Fisher had posted as surety for Flippo. The trial court granted the State's motion for summary judgment and Fisher appealed. By two points of error, Fisher complains that the trial court erred in granting summary judgment because the State failed to prove the essential elements of a bail bond forfeiture case and because a surety should be discharged from bail bond liability when the principal makes appearance as ordered on the bond and enters into a pre-trial diversion agreement. We disagree and affirm the judgment of the trial court.

On October 10, 1990, Hank William Flippo was charged by complaint and information with the offense of driving while his license was suspended. Fisher posted a $500 bail bond for Flippo, and Flippo agreed to appear before the County Court at Law of Nueces County, Texas, as required by law. The record reflects that on October 12, 1990, Flippo appeared before the County Court at Law No. 1 of Nueces County, Texas, and pleaded not guilty. The State then announced ready, and trial was set for October 19, 1990.

The record does not reflect what, if anything, occurred on October 19, 1990. The record does, however, reflect that on October 22, 1990, the trial court approved a pre-trial diversion agreement between Flippo and the State and ordered the case continued until December 22, 1990. The trial court's order was approved by Flippo and by an assistant county attorney on behalf of the State. Flippo agreed that the case be continued until December 22, 1990, and further agreed that by then he would 1) perform 40 hours of community service, 2) obtain liability insurance, 3) obtain reinstatement of his driver's license, 4) refrain from driving while his license was suspended, and 5) refrain from committing any violations of Federal, State, or local laws. The State agreed to move the court for dismissal of the case if Flippo complied with these conditions and paid court costs. Flippo and the State also agreed "that if the diversion is not complied with, the State shall proceed to trial in this cause."

Flippo did not comply with the conditions of the pre-trial diversion agreement and failed to appear before the trial court on December 22, 1990. The State requested that the bail bond be forfeited and that a capias issue for Flippo's arrest. The trial court rendered a judgment nisi against Fisher and Flippo and ordered that a capias issue for Flippo's arrest. The trial court did not sign the judgment nisi until March 12, 1991.

Fisher answered on April 4, 1991, and alleged that sickness or uncontrollable circumstances had prevented Flippo from appearing. See TEX.CODE CRIM.PROC.ANN. art. 22.13 (Vernon 1989). The State moved for summary judgment on May 7, 1991, alleging that the defenses set forth in Fisher's answer were insufficient as a matter of law. The State attached a copy of the bail bond to its motion for summary judgment and requested that the trial court take judicial notice of all pleadings in the bond forfeiture action and the antecedent criminal action. Appellant objected to the

State's summary judgment evidence on the grounds that it did not include the judgment nisi, that the copy of the bail bond was not certified or sworn, that pleadings are not summary judgment proof, that a genuine issue of material fact existed concerning appellant's defenses of sickness or uncontrollable circumstances, and that Fisher was discharged when the trial court approved the pre-trial diversion agreement between Flippo and the State. Summary judgment was entered against Fisher and Flippo on June 12, 1991. Fisher subsequently filed this appeal. Flippo did not join Fisher in this appeal.

■ A bond forfeiture is a criminal action, but, after the entry of a judgment nisi, all the proceedings are governed by the same rules as govern in civil cases. *Tinker v. State*, 561 S.W.2d 200 (Tex.Crim. App.1978); *Rodriguez v. State*, 680 S.W.2d 585, 586 (Tex.App.—Corpus Christi 1984, no pet.).

■ In moving for summary judgment in a bond forfeiture case, the State has the burden of establishing that there are no genuine issues of material fact regarding any of the essential elements of the State's cause of action, and that it is entitled to judgment as a matter of law. *Deckard v. State*, 615 S.W.2d 717, 718 (Tex.Crim.App. [Panel Op.] 1981); *Burns v. State*, 814 S.W.2d 768, 769 (Tex.App.—Houston [14th Dist.] 1991, no pet.). The essential elements of the State's cause of action in appearance bond forfeiture proceedings are the bond and the judgment nisi. *Deckard*, 615 S.W.2d at 718; *Serrano v. State*, 804 S.W.2d 543, 544 (Tex.App.—Houston [14th Dist.] 1991, no pet.). The State is not required to attach copies of the judgment nisi or the appearance bond to the motion for summary judgment, since those documents are part of the trial court's record in the case. *Deckard v. State*, 608 S.W.2d 675, 676 (Tex.Crim.App. [Panel Op.] 1980); *Escobar v. State*, 587 S.W.2d 714, 715 (Tex. Crim.App. [Panel Op.] 1979). Sickness or uncontrollable circumstances preventing the principal's appearance are affirmative defenses, and the party raising the defenses must present evidence of such to defeat a motion for summary judgment. *Burns v. State*, 814 S.W.2d 768, 770 (Tex.App.— Houston [14th Dist.] 1991, no pet.); *Mitchell v. State*, 632 S.W.2d 153, 154 (Tex. App.—Corpus Christi 1982, no pet.).

■ In the present case, the record before the trial court included the judgment nisi and the appearance bond. Appellant alleged sickness or uncontrollable circumstances preventing the appearance of the principal, but he offered no evidence in support of those allegations. The evidence before the trial court showed that the State was entitled to summary judgment. We overrule appellant's first point of error.

■ By his second point of error, appellant argues that a surety on a bail bond should be discharged from liability when the principal enters into a pre-trial diversion agreement and that the trial court erred by entering summary judgment against him. This is a question of first impression.

■ The primary purpose of an appearance bond is to secure the presence of the defendant in court upon the trial of the accusation against him. *Ex parte Rodriguez*, 595 S.W.2d 549 (Tex.Crim.App.1980); *Rodriguez v. State*, 680 S.W.2d 585, 586 (Tex.App.—Corpus Christi 1984, no pet.). The surety is liable for the defendant's personal appearance before the court to answer the charge against him as well as before any and all subsequent proceedings had relative to the charge. TEX.CODE CRIM. PROC.ANN. art. 17.09 (Vernon 1977).

A pre-trial diversion agreement is aptly named. It refers to a written agreement the defendant and State enter into on or before the day of trial. The State agrees to dismiss the case if the defendant performs certain conditions within a specified period of time. Both the State and the defendant request that the trial court continue the present trial setting to a certain date in the future to give the defendant time to comply with the agreed conditions. The agreement is then presented to the trial court for its approval. If the trial court does not approve the agreement, the case proceeds to trial as scheduled on the

docket. If the trial court approves the agreement, it grants the joint request for continuance and resets the trial to a certain date in the future. On that date, the defendant must appear before the trial court. If the defendant has complied with the conditions of the agreement, the trial court grants the State's motion to dismiss the pending criminal charges. If the defendant has not complied with the conditions of the agreement, the case proceeds to trial as scheduled.

Appellant argues that a surety's liability is discharged when the defendant appears at the trial of his case and the term of probation commences, whether regular probation or deferred adjudication probation is granted. *See Reed v. State*, 702 S.W.2d 738, 741 (Tex.App.—San Antonio 1985, no pet.); *Rodriguez*, 680 S.W.2d at 587. He argues that a surety should likewise be discharged when the defendant enters into a pre-trial diversion agreement.

We find that a pre-trial diversion agreement is distinguishable from probation, whether regular or deferred adjudication. Unlike probation or deferred adjudication programs, pre-trial diversion agreements, if completed by the defendant, obviate the trial completely. A pre-trial diversion agreement is entered into before the court hears any evidence, not after. A defendant may appeal from an order of regular probation and may even appeal from an order of deferred adjudication probation, despite having not been adjudicated guilty. *Dillehey v. State*, 815 S.W.2d 623, 626 (Tex. Crim.App.1991); TEX.CODE CRIM.PROC.ANN. art. 44.01(j) (Vernon Supp.1992). A defendant that enters into a pre-trial diversion agreement, however, cannot appeal because the pre-trial diversion agreement is not a final order that disposes of the case. A pre-trial diversion agreement requires that the court reset the trial to a certain future date, when the State may either move to dismiss the charges or go to trial. By contrast, unless the State seeks to revoke probation or to move to proceed to final adjudication, the probationer will never again be ordered to appear.

A trial court which hears a motion to proceed to final adjudication or to revoke probation is asked to find a violation of one of the terms of probation. If the defendant fails to comply with the pre-trial diversion agreement, the trial court is not asked to find a violation of the agreement. That court, or the jury, is asked to find that the defendant committed the original charged offense.

We also distinguish probation from pre-trial diversion on the grounds that probation, whether regular or deferred adjudication probation, may last ten years. TEX. CODE CRIM.PROC.ANN. art. 42.12 §§ 3, 4(a), 5(a) (Vernon Supp.1992). The courts in *Rodriguez* and *Reed* both noted the possibility that the State could hold a surety liable on the bond for 10 years, and they both concluded that a surety is discharged from liability when a defendant appears for trial and the court grants deferred adjudication probation. *Reed*, 702 S.W.2d at 741; *Rodriguez*, 680 S.W.2d at 587. By contrast, pre-trial diversion agreements create brief continuances. Trials may be continued upon good cause and agreement of the parties. TEX.CODE CRIM.PROC.ANN. art. 29.02 (Vernon 1989).

In the present case, trial was continued for two months to allow Flippo time to comply with the conditions set forth in the pre-trial diversion agreement. Both Flippo and the State agreed, and the trial court ordered the trial to be continued until December 22, 1990. The surety was bound for the term of trial and subsequent proceedings relative to the charge. Appellant was not discharged from bail bond liability when Flippo entered into a pre-trial diversion agreement with the State. We overrule appellant's second point of error.

We affirm the judgment of the trial court.