

# NUMBER 13-18-00607-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE FABIAN GARCIA

On appeal from the 206th District Court
of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Fabian Garcia appeals the trial court's denial of his petition for habeas corpus relief, wherein he requested that the trial court set aside his November 2014 guilty plea because, among other things, his trial counsel purportedly affirmatively misadvised him regarding potential immigration consequences. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. By seventeen issues, which we construe as four, Garcia asserts: (1) the trial court erred in issuing its October 2018 order because it denied relief he never requested; (2) the trial court abused its discretion in issuing its September 2018 order denying his

application for habeas corpus; (3) there was structural error due to judicial bias; and (4) the trial court abused its discretion by declining to rule on Garcia's outstanding motions. We affirm.

## I. BACKGROUND

### A. The Criminal Case

On May 19, 2014, Garcia was arrested for driving while intoxicated (DWI), a class A misdemeanor, and possession of less than one gram of a controlled substance (cocaine), a state jail felony. *See* TEX. PENAL CODE ANN. § 49.04; TEX. HEALTH & SAFETY CODE ANN. § 481.115(b). According to an offense report admitted into evidence at Garcia's habeas corpus hearing, Garcia was pulled over at approximately 1:54 a.m. on May 19, 2014, for "traveling at a high rate of speed" and failing to "maintain a single marked lane." The arresting officer reportedly noted an odor of alcohol emitting from Garcia's vehicle and breath and spotted an open alcohol container in the vehicle. The officer observed a clear baggie containing a white substance inside Garcia's wallet when Garcia opened his wallet to retrieve his license and registration. Garcia performed standardized field sobriety tests and submitted to two breathalyzer exams, which indicated he had blood alcohol concentration levels of .227 and .216. On June 19, 2014, the State received a Texas Department of Public Safety Laboratory Report confirming that the controlled substance found in Garcia's possession tested positive for cocaine. Garcia was indicted on possession of a controlled substance on July 30, 2014, in trial court cause number CR-2523-14-D. Garcia's trial counsel filed a general motion to suppress on September 11, 2014.

On November 14, 2014, Garcia signed a waiver of a right to appeal; a waiver of speedy trial; a document stipulating to the State's evidence; an "Agreed Punishment Recommendation and Post Conviction Waiver" which requested a deferred finding of guilt and a sentence of two years to run concurrent with his misdemeanor DWI case; a "Drug Court Diversion Program Admonishments" form; and a "Pre-Trial Diversion Program Waiver of Rights & Consent to Stipulation of Evidence and/or Testimony & Plea of Guilty." The documents were signed by Garcia, his counsel, and the trial court. On the same day, Garcia entered an oral plea of guilty to the possession charge in open court. Garcia was represented by Leo Pruneda, who was standing in for his retained counsel, Roel Trevino. In relevant part, the following transpired at the hearing:

| THE COURT: | All right. Garcia, you understand that a plea of guilty in this case can affect your immigration status? |
| --- | --- |
| THE DEFENDANT: | Yes. |
| THE COURT: | Counsel, you advised your client of the consequences of his plea, didn't you? |
| MR. PRUNEDA: | Well, he has been advised, but he also has an immigration hold on him. |
| THE COURT: | All right. Your lawyer says that he advised of the consequences of your plea. I must also advise you that that may include deportation, exclusion from admission to this country in the future, or the denial of naturalization. Do you understand that? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Do you still want to plead guilty? |
| THE DEFENDANT: | Yes. |

3

[The trial court provides general admonishments confirming Garcia's plea was being entered freely and voluntarily.]

THE COURT: The Court finds you've entered your pleas of guilty freely and voluntarily and accepts your pleas of guilty.

. . . .

[STATE]: Your Honor, at this time, the State recommends to the Court for the Court to abate all criminal proceedings in this matter. The State recommends to the Court that he be placed on the drug court diversionary program beginning instanter. He has screened and accepted into the program, and that he abide with and meet conditions of the drug court diversion program.

THE COURT: Very well. Is there a finding of guilt or no?

[STATE]: No, there is no finding of guilt.

THE COURT: Okay. Mr. Garcia, you said that this is your signature?

THE DEFENDANT: Yes.

On November 19, 2015, the State filed a "Motion to Dismiss Criminal Action" which stated:

The State . . . requests the Court to dismiss the criminal action contained in the indictment filed in the above numbered and styled cause [CR-2523-14-D] in which Defendant is charged with the offense of POSSESSION OF CONTROLLED SUBSTANCE, PENALTY GROUP ONE, IN AN AMOUNT OF LESS THAN ONE (1) GRAM alleged to have been committed on or about 05/19/2014, and for cause would show the following:

Defendant successfully completed Drug Court Diversion Program and State elects not to prosecute.

WHEREFORE, it is prayed that the criminal action contained in the indictment in the above numbered and styled cause be dismissed.

4

Below the State's signature, on the same page of the State's motion, was an order entitled "Order Dismissing Criminal Action." The order stated in its entirety: "The foregoing motion having been presented to me, and the same having been considered, it is, therefore ORDERED, ADJUDGED AND DECREED that the same is hereby dismissed. Signed on November 19, 2015." The trial court's signature followed.

## B.    Original Petition for Writ of Habeas Corpus

Seven months later, on June 13, 2016, Garcia filed his petition for writ of habeas corpus, requesting that the trial court issue "an order setting aside and vacating as void both this applicant's oral and signed admissions of guilty [sic] . . . and this court's resulting order of community supervision conditions entered in Hidalgo County district court cause no. CR-2523-14-D . . . ." Garcia asserted in his petition that (1) the trial court retained jurisdiction because the November 19, 2015 dismissal order specifically dismissed the State's motion—not his criminal court cause; (2) his trial counsel failed to review or obtain discovery from the State; (3) his trial counsel failed to inform him of the effects of a guilty plea on his immigration status; and (4) his trial counsel's deficiencies resulted in an unintelligently and involuntary guilty plea.

As evidence in support of his petition, Garcia attached an email from the district attorney's office,[1] an email from his prior trial counsel's office,[2] thirteen letters from

---

[1] The email confirmed that the district attorney's office did "not have any record of written or electronic discovery having been exchanged in this matter"; that Garcia entered into the pretrial diversion program on November 14, 2014; and that Garcia "successfully completed the program on November 19, 2015."

[2] The email stated in full:

5

friends and family,[3] and a written statement by Garcia. In Garcia's written statement, he stated that he was born and studied in Mexico.[4] Garcia is married to a U.S. citizen, and they have a three-year-old daughter together. Garcia admitted to drinking with a neighbor on the evening of his arrest and claimed his neighbor had given him the "baggie of cocaine and told [Garcia] to hold it for him." Because he had been in an argument with his wife earlier in the evening, he "decided to go to [his] sister's . . . house" instead of going home. Garcia said he was en route to his sister's house when he was pulled over at 1:40 a.m. Garcia stated he had "forgotten" about the baggie of cocaine in his wallet, and "[t]he police officer must have seen the baggie" when Garcia pulled out his wallet to retrieve his identification cards. Garcia stated that after he was arrested and posted bond, he was transported to an immigration facility, and his family hired immigration attorney Ron Lozano to "adjust [his] status."[5] Garcia stated Lozano referred him to Trevino, and Pruneda appeared in Trevino's place at the hearing when Garcia made his guilty plea. With respect to what he was told at the hearing, Garcia stated:

---

This email is in regards to the discovery for Fabian Garcia[,] a mutual client [sic]. Mr. Trevino stated there was no discovery request since Mr. Garcia accepted the [pretrial diversion] program and completed his terms and conditions. If you have any further question[s,] please feel free to contact our office. Thank you[.]

[3] Garcia's friends and family all positively opined on his reputation as a hard worker and good father.

[4] Garcia does not specify when he first came to the United States.

[5] The record contains conflicting evidence as to whether Garcia was in the United States legally at the time of the stop. Garcia's written statement states that he "had permission to be in the United States," but he "could not work," and he needed his wife to "apply[] to make [his] status in the United States legal." A Hidalgo County Jail "Booking Report" contained in the record indicates that Garcia was not legally in the United States, and the arrest report lists Garcia as an "illegal alien." Additionally, Garcia's wife, Ashley Garcia, submitted a written affidavit wherein she swore that Garcia has "never been a lawful resident of the United States."

6

Mr. Pruneda told me that I needed to plead guilty because the District Attorney had offered a one[-]year program and that would dismiss my possession charge. I told Mr. Pruneda that Mr. Trevino had told me not to plead guilty to the possession charge. Mr. Pruneda told me that things had not turned out like Mr. Trevino thought. The District Attorney was offering a one[-]year program and not the half year program but the possession charge would be dismissed just the same. We went into the hearing[,] and I plead[ed] guilty to the possession charge as instructed by Mr. Pruneda. The Judge asked me if I knew that pleading guilty might affect me in my immigration case. I plead[ed] guilty because it was my attorney's instruction. . . . Mr. Trevino and Mr. Pruneda never told me anything about what they read or saw in the District Attorney's [officer dash camera] video. All they told me was the charges against me were DWI and possession. I would not have plead[ed] guilty if the lawyers had told me my admission of guilt to possession of cocaine would result in my being removed from the country by the federal government officials. . . .

On July 29, 2016, the trial court held a hearing[6] on Garcia's habeas petition and summarily concluded: "[A]ll relief should be denied for the court is unable to fashion or provide Appellant-Defendant any remedy after the indictment pending in CR-2523-14-D was dismissed by court order."

Pursuant to a bill of exception, Garcia elicited the following testimony from his trial counsel and two local attorneys unaffiliated with his case.

Kyle Brown, an immigration attorney, testified that although the State of Texas may not recognize a plea of guilty as a conviction in a pretrial diversion case where adjudication is withheld, it satisfies the definition of conviction for federal immigration purposes. *See* 8 U.S.C.A. § 1227 (a)(2)(B)(i) (providing for deportation following a conviction "relating to a controlled substance"); *id.* § 1101(a)(48)(A) (defining "conviction" as "a formal judgment of guilt" or "if adjudication of guilt has been withheld, where . . . the

---

[6] Garcia was not present for the hearing; he was in the custody of the United States Department of Homeland Security. Garcia's habeas corpus counsel was present on his behalf.

alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and . . . the judge has ordered some form of punishment, penalty, or restraint . . ."); *see also Ex parte Torres*, 483 S.W.3d 35, 44 (Tex. Crim. App. 2016). Brown stated that Garcia's trial counsel was required to provide Garcia with "affirmative advi[c]e that this [guilty plea] was going to have a very negative consequence with respect to his immigration status."

Trevino testified that he "was hired" by Lozano to "obtain a pretrial diversion disposition" for Garcia, and Garcia was "well aware" of the immigration consequences of his plea: "I specifically told him that the way I understood the immigration law and its consequences, if he pled guilty, that he would be deported, but his other lawyer [Lozano] was telling him and me that he could possibly get around that." Trevino was also questioned as to why he had not requested discovery for the case. Trevino maintained he "was not hired to try the case or defend the case in some other manner"; instead, he had been "hired for a specific task[,] which was to get [Garcia] pretrial diversion" because Lozano "had not been able to get it." Lozano did not testify.

Pruneda testified that he stood in for Trevino on the day of the plea because Trevino was ill. Pruneda stated he also cautioned Garcia about the possible immigration consequences of pleading guilty:

> Mr. Garcia indicated that he was not a U.S. Citizen[,] and I informed him that in all likelihood he could be deported if he were to be found guilty or if he pled in any manner to the alleged offense, particularly a felony. . . .
>
> So I told him that in all likelihood, that was my exact words to him, in all likelihood, he could be facing deportation. I said, I don't know. I can't tell you because I don't have a crystal ball. I use that example a lot with a lot of my

8

clients. I don't have a crystal ball because immigration like anything else, could be treated on a case[-]by[-]case basis.

Pruneda testified he did not review discovery in the case.

Victoria Guerra, a local appellate attorney, opined that she would have filed a motion to suppress in Garcia's case, questioning the legality of the traffic stop after reviewing the video recording from the arresting officer's vehicle dash camera. It is unclear whether Guerra reviewed the arresting officer's investigative report, which was also admitted as an exhibit at the hearing.[7]

Garcia additionally offered an affidavit written by his sister, Gabriela Garcia, who swore that she accompanied Garcia to several meetings with Trevino.[8] While she "d[id] not recall every conversation they had," she did remember that "Trevino told [Garcia] to plead guilty and that he would help him later by getting him on probation." Gabriela stated she "never heard Mr. Trevino explain to [Garcia] that if he plead[ed] guilty to the charges[,] it would affect him."

On August 18, 2016, Garcia filed a "Request For Reconsideration Of All Issues Raised," "Request For Findings Of Facts And Conclusions Of Law," and his notice of appeal. On August 29, 2016, Garcia filed a motion for new trial, and the trial court held a

---

[7] According to the arresting officer's narrative, the officer observed Garcia's vehicle "traveling at a high rate of speed westbound," and "failing to maintain a single marked lane continuously." The officer stated the vehicle approached the intersection where the officer was stopped at and "came to a complete stop" before turning left in front of the officer. In a dash camera recording admitted into evidence, Garcia's vehicle does not come into view until he crosses in front of the officer at the intersection, who at the time, was visibly stopped at a red light. After crossing the intersection, Garcia can be seen on video failing to maintain a single lane.

[8] Gabriela Garcia's affidavit, although eight pages in length, largely concerned the alleged tumultuous relationship between Garcia and his wife and Garcia's unrelated arrest for assault family violence which postdated the underlying criminal cause here.

hearing on Garcia's motion for new trial on September 2, 2016, before denying Garcia's motion.

## C. Reversed and Remanded

On March 29, 2018, this Court issued a memorandum opinion, reversing the trial court's order denying Garcia's application for writ of habeas corpus and remanding "[w]ithout addressing the merits of Garcia's issues on appeal" because "the record before us [wa]s factually inadequate to permit us to appropriately determine the merits of Garcia's application." *Ex parte Garcia*, No. 13-16-00462-CR, 2018 WL 1545505, at *1–2 (Tex. App.—Corpus Christi–Edinburg Mar. 29, 2018, no pet.) (mem. op., not designated for publication). Pursuant to article 11.072, we ordered the trial court to "include a written order either denying the application on the grounds that it is frivolous, or a written order granting or denying the application which includes findings of fact and conclusions of law as required by statute." *Id.* at *3; *see* TEX. CODE CRIM. PROC. ANN. art. 11.072.

## D. Supplemented Petition for Writ of Habeas Corpus

On July 25, 2018, Garcia filed an "Applicant's Supplement To Petition For Writ Of Habeas Corpus." The trial court held a hearing on August 29, 2018, and issued findings of fact and conclusions of law on September 26, 2018, denying the application on remand. In relevant part, the trial court held:

> 7.      Pursuant to the Thirteenth Court of Appeals' March 29, 2018 memorandum opinion, this court has reviewed the transcript of the original habeas proceeding, including the testimony that Applicant Garcia's habeas counsel presented as bill-of-exception evidence to prove his claim of ineffective assistance of counsel.
>
> > i.      This Court also finds Kyle Brown, Applicant Garcia's immigration law expert to be credible.

10

. . . .

ii. In particular, this Court finds the testimony of Roel Trevino, Applicant Garcia's criminal defense counsel, to be credible.

. . . .

iii. This Court also finds Leo Pruneda, the attorney that stood in for Mr. Trevino during Applicant Garcia's entry into pre-trial diversion proceeding [sic].

. . . .

iv. This Court does not find the affidavits of Gabriela Garcia, Applicant Fabian Garcia's sister, or Ashley Garcia,[9] Applicant Fabian Garcia's wife, to be credible.

v. This Court finds that Applicant Garcia was well aware of the immigration consequences before his entry into the pretrial diversion program.

. . . .

5. The evidence presented by Applicant Garcia demonstrated that his criminal defense attorney of record, Robert [sic] Trevino, told Applicant Garcia that ". . . if he pled guilty, he would be deported, but his other lawyer was telling him and me that he could possibly get around that. So he had the immigration lawyer before he had me." Such advice complies with the mandate of *Padilla*.[10]

6. To the extent that Applicant Garcia has argued that *Padilla*'s mandate extends not just to his criminal defense attorney, but also to his immigration attorney, Applicant Garcia's own immigration law expert repeatedly stated that *Padilla* requires that when consequences are clear, the criminal law attorney has the independent responsibility to investigate and provide appropriate advice. Mr. Brown provided sound analysis of what

---

[9] Ashley Garcia's affidavit was admitted for the first time at the August 2018 hearing. Ashley stated that, like Gabriela Garcia, she also attended several meetings with Trevino and "heard Mr. Trevino tell [Garcia] that he would have to plead guilty to the DWI but not the possession case." Ashley stated Trevino repeatedly cautioned Garcia "to plead not guilty to the drug possession charge." According to Ashley, it was Pruneda who directed Garcia to plead guilty to the possession case on the day of the plea hearing—not Trevino, and Garcia "plead guilty to drug possession as instructed by Mr. Pruneda."

[10] *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).

11

*Padilla* requires in this situation, and Applicant Garcia has cited no authority extending *Padilla*'s duty to warn of immigration consequences to outside non-criminal counsel, and this Court has not found any. In addition, Mr. Trevino's testimony makes clear that he did his own independent investigation, concluded, and informed Applicant Garcia of the "automatic" deportation consequences of a guilty plea.

7.      Though the language used by Mr. Pruneda, who stood in for Mr. Trevino during Applicant Garcia's entry into pretrial diversion proceeding, was not as strong regarding the certainty of Applicant Garcia's immigration consequences, the Court does not find that Mr. Pruneda's testimony that " . . . I told him that in all likelihood, that was my exact words to him, in all likelihood, he could be facing deportation" was so prejudicial that Applicant Garcia suffered ineffective assistance of counsel. Because of Mr. Trevino's clear advice regarding immigration consequences, this Court cannot say that Applicant Garcia was not warned as required under *Padilla*. Though it is clear that Applicant Garcia was understandably and rightly concerned with immigration consequences given that he hired an immigration attorney, the fact remains that Applicant Garcia, at the time of his entry into the pretrial diversion program, was an undocumented immigrant and was deportable for that reason alone, both in 2014 and today.

Had Applicant Garcia gone to trial and been acquitted, he would not have been transformed into a legal resident, and could have been deported immediately after walking out of the courthouse. Applicant Garcia has not demonstrated a reasonable probability of a different outcome. [*Strickland v. Washington*, 466 U.S. 668, 693 (1984).]

. . . .

10.     Unlike any of the case law cited by Applicant Garcia, the circumstances here are unique in that this case involves pretrial diversion, a program administered by the district attorney's office under its authority to bring and dismiss cases, and not deferred adjudication, a suspended judicial finding of guilt. As noted above, Applicant Garcia's criminal case was dismissed upon successful completion of pretrial diversion on the State's motion on November 19, 2015, and therefore, there is no jurisdiction remaining in this Court. [*Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex. Crim. App. [Panel Op.] 1980)]. Furthermore, there is no legal authority enabling this Court to "resurrect" a dismissed case for purposes of "reversing" Applicant Garcia's entry into the program as a remedy for ineffective assistance of counsel on habeas.

12

On October 9, 2018, Garcia filed "Objections and Request for Hearing on his Objections" to the court's September 26, 2018 order. Two days later, Garcia filed a motion for new trial and request for hearing. The trial court thereafter issued a blanket "Order" on October 24, 2018, which stated in its entirety:

> Applicant Fabian Garcia has filed an Application for Writ of Habeas Corpus Under Article 11.07 of the Code of Criminal Procedure, ("Procedure After Conviction Without Death Penalty") and several hearings have been had. Petitioner[']s counsel has requested additional hearings.
>
> However, Petitioner has not been convicted of a crime. He complains of treatment he has suffered after his indictment was dismissed pursuant to an agreement with the district attorney under a pretrial diversion program.
>
> Because [Garcia] admitted in open court that he possessed a controlled substance and was deported, not being a citizen of the United States, he is ineligible for a visa to return to this country.
>
> I hold his petition for habeas corpus is frivolous and he is not entitled to relief under Art. 11.07 because he has not been convicted of a crime, which is a requisite for relief under the statute.
>
> Accordingly, all relief is denied including additional hearings before the trial court.

This appeal followed.[11]

## II.   STANDARD OF REVIEW

Pursuant to article 11.072, Garcia sought relief from a pretrial diversion agreement he entered into on November 14, 2014. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. Article 11.072 "establishes the procedures for an application for a writ of habeas corpus

---

[11] Garcia's brief was initially due December 21, 2018. Following Garcia's seventh request for extension of time to file his appellate brief, this Court abated this cause on March 2, 2020, for the trial court to determine whether Garcia intended to prosecute his appeal. The trial court held a hearing on March 16, 2020, and the trial court determined that Garcia wished for his appellate counsel to remain; that counsel has not abandoned the appeal; that counsel "stopped [work on this case] due to demands of a Fourth Court of Appeals" order requiring him to file a brief in an unrelated case by March 23, 2020; and that "there is no prejudice to appellant, who is not incarcerated."

in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." *Id.* art. 11.072, § 1. "At the time the application is filed, the applicant must be, or have been, on community supervision, and the application must challenge the legal validity of: (1) the conviction for which or order in which community supervision was imposed; or (2) the conditions of community supervision." *Id.* art. 11.072, § 2(b).

"[T]he writ of habeas corpus is an extraordinary remedy that is available only in the absence of an adequate remedy at law." *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017); *see* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 1. An applicant for writ of habeas corpus under article 11.072 "bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Lalonde*, 570 S.W.3d 716, 725 (Tex. Crim. App. 2019) (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002)). On review of the denial of an application for writ of habeas corpus, we defer to the habeas court's findings of fact, particularly those related to credibility and demeanor, when those findings are supported by the record. *Ex parte Garza*, 620 S.W.3d 801, 808 (Tex. Crim. App. 2021) (citing *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014)). "We similarly defer to any implied findings and conclusions supported by the record." *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010); *see Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020). We view the facts in "the light most favorable to the trial court's ruling" and will uphold the trial court's ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). "However, we review de novo mixed questions of law and fact that do not depend upon

credibility and demeanor." *Ex parte Duque*, 540 S.W.3d 136, 145 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

### III.   OCTOBER 2018 ORDER

Garcia challenges both the trial court's September 2018 and October 2018 orders on appeal, asserting that the orders are erroneous in their respective legal conclusions. With respect to the October 2018 order, the State is in agreement. In the October 2018 order, the trial court denied Garcia habeas corpus relief under article 11.07. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (establishing "the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death"). Yet, it is undisputed by either party, and confirmed following our review of the record, that Garcia has never sought relief under article 11.07. *See id.* Thus, to the extent that Garcia asserts the trial court erred in issuing its October 2018 order, which only serves to deny relief that was never requested, we agree.[12] However, Garcia does not assert—nor do we conclude—that such error affected his substantial rights. As such, the trial court's error "must be disregarded." *See* TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *see also Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021). We overrule Garcia's first issue.

---

[12] Garcia does not present any argument as to what effect, if any, the October 2018 order should have on the September 2018 order, which appropriately addressed Garcia's relief sought under article 11.072. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072.

15

## IV.    SEPTEMBER 2018 ORDER

The trial court's September 2018 order denied Garcia relief under article 11.072 and included several findings of fact and conclusions of law, as indicated *supra*. Garcia's second issue is twofold in that it challenges the trial court's rulings on both avenues upon which he requested relief. The trial court denied relief, in part, because it found it lacked jurisdiction to entertain Garcia's petition for writ of habeas corpus. *See Ex parte Schmidt*, 109 S.W.3d 480, 481–82 (Tex. Crim. App. 2003). The trial court further concluded that Garcia had failed to meet his burden to show relief under his ineffective assistance of counsel claim. *See Ex parte Lalonde*, 570 S.W.3d at 725. We address the jurisdictional issue first.

### A.    Jurisdiction

The trial court reasoned that Garcia was not seeking relief from an order or a judgment of conviction ordering community supervision, to which article 11.072 would apply, because Garcia entered into a "program administered by the district attorney's office under its authority to bring and dismiss cases, and not deferred adjudication." *See* TEX. CODE CRIM. PROC. ANN. art. 11.072; *see generally Ex parte Enriquez*, 227 S.W.3d 779, 783 (Tex. App.—El Paso 2005, pet. ref'd) (concluding the trial court did not lack jurisdiction to consider habeas corpus application filed by appellant who had been successfully discharged from deferred adjudication community supervision).

Notably, Garcia has cited no cases, and we have found none, wherein an applicant has sought relief from a pretrial diversion agreement through an article 11.072 petition— presumably because traditional pretrial diversion and community supervision are not the

16

same. *See Fisher v. State*, 832 S.W.2d 641, 643–44 (Tex. App.—Corpus Christi–Edinburg 1992, no pet.). In *Fisher*, this Court analyzed the difference between pretrial diversion and regular community supervision:

> A pre-trial diversion agreement is aptly named. It refers to a written agreement the defendant and State enter into on or before the day of trial. The State agrees to dismiss the case if the defendant performs certain conditions within a specified period of time. Both the State and the defendant request that the trial court continue the present trial setting to a certain date in the future to give the defendant time to comply with the agreed conditions. The agreement is then presented to the trial court for its approval. If the trial court does not approve the agreement, the case proceeds to trial as scheduled on the docket. If the trial court approves the agreement, it grants the joint request for continuance and resets the trial to a certain date in the future. On that date, the defendant must appear before the trial court. If the defendant has complied with the conditions of the agreement, the trial court grants the State's motion to dismiss the pending criminal charges. If the defendant has not complied with the conditions of the agreement, the case proceeds to trial as scheduled.

*Fisher*, 832 S.W.2d at 643–44. Another distinction is that, traditionally, pretrial diversion, unlike community supervision, does not require a finding of guilt on the record. *See id.* ("A pre-trial diversion agreement is entered into before the court hears any evidence, not after."); *see also Lee v. State*, 560 S.W.3d 768, 772–73 (Tex. App.—Eastland 2018, pet. ref'd) (observing that pretrial diversion, unlike deferred adjudication, has "no requirement that it be offered only after a finding of guilt"); *State v. McNutt*, 405 S.W.3d 156, 159 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *compare* TEX. CODE CRIM. PROC. ANN. art. 42A.101 (permitting a trial court to place a defendant on deferred adjudication community supervision "after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt") *with* TEX. GOV'T CODE ANN. § 76.011 (containing no obligatory plea language for pretrial diversion programs).

This case, however, poses a unique situation: for reasons unknown to this Court, Garcia completed both pretrial diversion paperwork and deferred adjudication paperwork, and he submitted a written plea of guilt for both:

> I freely and voluntarily plead GUILTY, and I admit I committed each and every element of every offense alleged in the indictment or information, namely, POSSESSION of controlled substance, to-wit: cocaine, in an amount of less than one gram, state jail felony, committed on May 19, 2014.

Garcia further requested in writing that the trial court "consider deferring further proceedings without entering an adjudication of guilty, and place [him] on community supervision for a period not to exceed ten (10) years." Garcia, his counsel, the State, and trial court signed this document. The trial court averred that it found "such plea, waivers, and consent to be voluntarily made," and the court "accept[ed] the plea and approve[d] the waivers and stipulations made by the Defendant." An "Agreed Punishment Recommendation and Post-Conviction Waiver" followed, which was also signed by Garcia, his counsel, the State, and trial court. All the aforementioned documents were filed with the trial court clerk.

Garcia also submitted an oral guilty plea on the record following general guilty plea admonishments from the trial court. Although no deferred adjudication order appears in the record, a "Drug Court Diversion Program Order" authorizing Garcia's participation in the "DRUG COURT DIVERSION PROGRAM for a period of EIGHTEEN (18) months" does. Garcia was "ORDER[ED]" to submit to a substance abuse "evaluation by the Hidalgo County Community Supervision and Corrections Department" and "enroll and participate in [a 15-hour drug education program] and any other programs the assessment determines are necessary . . . ." Additionally, the trial court ordered Garcia

18

to complete 120 hours of community service, pay a monthly program fee, maintain employment, remain in Hidalgo County, submit to random urinalysis testing, avoid "all establishments whose primary business or source of income is selling or distributing alcoholic beverages," "avoid the use or [a]buse" of alcoholic beverages or "[m]ind-[a]ltering [d]rugs during the entire period of community supervision," and "report to the community supervision officer as directed by the Hidalgo County Community Supervision and Corrections Department." The order further advised:

> [A]t any time during the period of DRUG COURT supervision, the Court may alter or modify the conditions of supervision. Violations of any of the conditions imposed upon you may result in sanctions or removal from the program. You are further advised that the Hidalgo County Community Supervision and Corrections Department may also alter or modify the conditions imposed upon you.

The order was signed by the trial court, and Garcia's criminal proceedings were "abate[d]." *See Ex parte Lanclos*, 624 S.W.3d 923, 928 (Tex. Crim. App. 2021) (defining community supervision as "the placement of a defendant under a continuum of programs and sanctions during a period of deferred criminal proceedings or in lieu of incarceration and/or fine" (citing TEX. CODE CRIM. PROC. ANN. art. 42A.001(1))). The parties do not dispute that Garcia was bound by and successfully completed the requirements set forth in the trial court's order.

Under these facts, it cannot be said that Garcia entered into a traditional pretrial diversion agreement between himself and the State. *See id.*; *Fisher*, 832 S.W.2d at 643–44. Garcia entered into a pretrial diversion agreement in name only, and to the extent the trial court's denial of relief was predicated on a lack of jurisdiction under article 11.072,

19

we conclude that such finding was erroneous.[13] Because the trial court additionally concluded that relief was not appropriate because Garcia had not met his burden under article 11.072, our analysis continues.

## B. Ineffective Assistance

### 1. Applicable Law

"In order to prevail on a Sixth Amendment claim of ineffective assistance of counsel, a habeas applicant must show, by a preponderance of the evidence," that: (1) "counsel's performance was deficient" in that counsel "failed to satisfy an objective standard of reasonableness under prevailing professional norms"; and (2) appellant was prejudiced as a result of counsel's errors in that, but for those errors, there is a reasonable probability of a different outcome. *Ex parte Bowman*, 533 S.W.3d 337, 349–50 (Tex. Crim. App. 2017) (quoting *Strickland*, 466 U.S. at 687). An applicant's claim fails unless he proves both prongs of the *Strickland* standard by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

---

[13] Embedded in Garcia's jurisdictional argument is an invitation for this Court to find that no dismissal occurred following his satisfactory completion of pretrial diversion, and therefore, the trial court retained jurisdiction over his petition. We do not believe that such a finding would serve any purpose given that article 11.072 applies to criminal cases even where a dismissal has occurred. *See Ex parte Enriquez*, 227 S.W.3d 779, 783 (Tex. App.—El Paso 2005, pet. ref'd); *see also Ex parte Brumant*, No. 14-15-00337-CR, 2015 WL 5935817, at *3–4 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, pet. ref'd) (mem. op., not designated for publication) (analyzing appellant's writ of habeas corpus claim under article 11.072 where appellant alleged trial counsel rendered ineffective assistance in that she failed to advise appellant of the immigration consequences of her guilty plea following a successful discharge and dismissal from deferred-adjudication probation); *Saucedo v. State*, No. 12-14-00107-CR, 2015 WL 3451570, at *1 (Tex. App.—Tyler May 29, 2015, no pet.) (mem. op., not designated for publication) (same).

Further, we disagree with Garcia's categorization of the trial court's dismissal as one which "only dismissed the State's motion to dismiss the cause of action"—not the cause of action itself. The trial court's order is on the same page as the State's motion to dismiss, wherein the State requested a dismissal of the cause due to Garcia's successful completion of the "Drug Court Diversion Program" and the State's "elect[ion] not to prosecute." Although the order's language, included in its entirety *supra*, was brief, it would defy reason for us to treat the attached order to the State's motion to dismiss as one which only dismisses the State's motion.

Under the first prong, "reasonableness" is "assess[ed] under the circumstances of the particular case 'viewed as of the time of counsel's conduct.'" *Ex parte Bowman*, 533 S.W.3d at 350 (quoting *Strickland*, 466 U.S. at 688, 690). "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. However, when deportation consequences of a guilty plea are "truly clear," counsel's duty to advise his client of those consequences is "equally clear." *Ex parte Torres*, 483 S.W.3d at 44 (citing *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010)). Counsel must adequately advise a defendant about the "presumptively mandatory" deportation consequences of a guilty plea. *Id.* When the deportation consequences of a plea are "not succinct and straightforward," counsel should advise his client of the possibility that a guilty plea may carry a risk of adverse immigration consequences. *Padilla*, 559 U.S. at 369; *accord Ex parte Torres*, 483 S.W.3d at 44.

The second prong requires appellant show counsel's deficient performance caused appellant to suffer prejudice. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Ex parte Torres*, 483 S.W.3d at 43. When a plea agreement is at issue, an applicant meets the prejudice prong by showing a reasonable probability that, but for counsel's deficient performance, the applicant would have "insisted on going to trial" rather than accepting the offer and pleading guilty. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *Ex parte Torres*, 483 S.W.3d at 45. In evaluating the evidence of appellant's decision making regarding his plea, "[c]ourts should not upset a plea solely because of *post hoc* assertions

from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 137 S. Ct. at 1967. Reviewing courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Other factors considered in conducting the prejudice prong analysis include the likelihood of a petitioner's success at trial, the benefits he received from the plea bargain, and the trial court's plea admonishments. *Ex parte Torres*, 483 S.W.3d at 43.

## 2. Analysis

Garcia's ineffective assistance claim on appeal is multifaceted. Garcia claims (1) his trial counsel "affirmatively misadvised" him of the immigration consequences of his guilty plea, thereby resulting in an involuntary, ill-informed, unintelligent plea; (2) his trial counsel erred in failing to procure and review discovery; and (3) his trial counsel had a conflict of interest "by forcefully advocating that Appellant accept the [pre-trial diversion] program plea bargain offered by the State as mandated by a third party (Lozano), who directed Trevino how to dispose of those pending criminal charges."

### a. Affirmative Misadvice

"The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Lee*, 137 S. Ct. at 1966. Garcia states Trevino and Pruneda "never told [him] that by admitting that [he] was guilty of pleading [sic] to cocaine that this would remove all possibility of [his] wife applying to make [his] status in the United States legal." Therefore, Garcia contends, his plea was involuntarily made. *See id.*

Even construing what Garcia asserts occurred as "affirmative misadvice"—instead of no advice—Garcia's claim of affirmative misadvice is controverted by other evidence in the record. *See Ex parte Osvaldo*, 534 S.W.3d 607, 619 (Tex. App.—Corpus Christi–Edinburg 2017), *aff'd sub nom*. *Ex parte Garcia*, 547 S.W.3d 228 (Tex. Crim. App. 2018) (observing the distinction between "affirmative misadvice" and "no advice" regarding immigration consequences). Trevino stated that he explicitly told Garcia that "if he ple[a]d[ed] guilty, that he would be deported." Pruneda, who testified that he "st[oo]d in" for Trevino in court on the day the plea agreement was executed, stated he told Garcia that "in all likelihood he *could* be deported if he were to be found guilty or if he pled in any manner to the alleged offense." (emphasis added). Both attorneys stated that Garcia nonetheless chose to proceed. Further, on the day Garcia entered his guilty plea, Pruneda stated on the record that he had advised Garcia of the immigration consequences of his plea, and Garcia affirmed he understood that such consequences could include "deportation, exclusion from admission to this country in the future, or the denial of naturalization." There was nothing in the proceedings to indicate that Garcia had been affirmatively misadvised or was advised of immigration consequences for the first time when he was generally admonished by the trial court.

Although Garcia challenges the credibility of Trevino and Pruneda's statements, the trial court was entitled to believe Trevino and Pruneda's version of events over Garcia's self-serving affidavit and Ashley and Gabriela's conflicting affidavits. *See Ex parte Garza*, 620 S.W.3d at 808; *Ex parte Skelton*, 434 S.W.3d 709, 717 (Tex. App.—San Antonio 2014, pet. ref'd) ("The habeas court is the sole finder of fact in an article

23

11.072 habeas proceeding, and we afford almost total deference to its determinations of historical fact that are supported by the record."); *Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[T]he habeas court was free to disbelieve appellant's self-serving testimony."); *see also Martinez v. State*, No. 07-15-00224-CR, 2016 WL 638024, at *4 (Tex. App.—Amarillo Feb. 4, 2016, pet. ref'd) (mem. op., not designated for publication) ("Because the trial court was entitled to believe trial counsel's version of events, we find it was reasonable for the court to conclude counsel advised appellant that if he pleaded guilty, he would be subject to deportation no matter the sentence imposed."). Moreover, the record supports the trial court's finding that Garcia was not affirmatively misinformed regarding the immigration consequences of a guilty plea. *See Ex parte Harrington*, 310 S.W.3d at 457. For these reasons, Garcia failed to prove the first *Strickland* prong. *See Strickland*, 466 U.S. at 687. Accordingly, the habeas court did not abuse its discretion by denying Garcia's application on this ground, and we overrule this sub-issue.[14]

### b.      Investigation Challenge

Garcia next asserts an investigation challenge. "An attorney representing a criminal defendant is charged with making an independent investigation of the facts of the case." *Castellano v. State*, 49 S.W.3d 566, 576 (Tex. App.—Corpus Christi–Edinburg 2001, pet. ref'd); *see Ex parte Harrington*, 310 S.W.3d at 458 ("A criminal-defense attorney 'must have a firm command of the facts of the case' before he or she may render reasonably effective assistance of counsel." (quoting *Ex parte Welborn*, 785 S.W.2d 391,

---

[14] To the extent that Garcia's subsidiary claim of plea involuntariness, predicated on the alleged affirmative misadvice, is a stand-alone issue on appeal, it is likewise overruled.

24

393 (Tex. Crim. App. 1990))). "An advocate's strategic decisions must be informed by a reasonable preliminary investigation." *Ex parte Bowman*, 533 S.W.3d at 350; *Ex parte Harrington*, 310 S.W.3d at 459 (concluding that counsel's failure to "conduct even a cursory investigation into the alleged prior conviction, an allegation that enhanced the offense from a misdemeanor to a felony," was erroneous). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003).

> We will sustain the defendant's challenge only if the consequence of [defense counsel's] failure to investigate is that the only viable defense available to the accused is not advanced, and there is a reasonable probability that, but for counsel's failure to advance the defense, the result of the proceeding would have been different.

*Castellano*, 49 S.W.3d at 576 (citing *Strickland*, 466 U.S. at 694).

Here, Trevino filed a motion to suppress evidence in Garcia's criminal case prior to executing the plea agreement. However, Trevino testified he had filed the motion to suppress as a "customary" measure "in case we c[ould not] work it out." Trevino maintained that he "made no formal request for discovery," and he could not recall whether he looked at the State's file before resolving the case. Trevino testified that he did not request discovery because he had been "hired for a specific task[,] which was to get [Garcia] pretrial diversion." *See Ex parte Harrington*, 310 S.W.3d at 458 ("Counsel has a duty to provide advice to his client about what plea to enter, and that advice should be informed by an adequate investigation of the facts of the case or be based on a

25

reasonable decision that investigation was unnecessary."). Pruneda testified that he did not "personally review" the discovery in Garcia's case.

Although the trial court concluded Trevino's investigation had been adequate, we need not determine its adequacy; even if inadequate, "we could not conclude that had counsel conducted further investigation, it would have produced a different result." *Castellano*, 49 S.W.3d at 577; *cf. Ex parte Rogers*, 369 S.W.3d 858, 865 (Tex. Crim. App. 2012) (finding appellant was prejudiced by his counsel's failure to adequately investigate his case where appellant had been exonerated by DNA testing, and had this evidence been presented at trial, "[t]here is a reasonable probability that the jury would have had reasonable doubt that Applicant committed the extraneous offense"). Garcia's claim of inadequate investigation relates to the allegedly unlawful seizure underlying the cocaine possession charge. Garcia avers: (1) the arresting officer lacked reasonable suspicion to effectuate the stop; (2) Guerra asserted that she would have filed a motion to suppress in Garcia's case had she represented Garcia; and (3) consequently, a different result would have ensued had his counsel adequately investigated his case. However, the record does not affirmatively support this conclusion.

According to Garcia, the light at the intersection was red as he approached it, he "paused and the light turned green right away," and he then proceeded into the intersection and turned left. He was pulled over shortly after. Garcia stated: "The officer told me he was pulling me over because of the way I was driving." Garcia's statement makes no mention of whether or not he was speeding or unable to maintain a single lane. Meanwhile, the arresting officer's written report states: Garcia was speeding and unable

26

to maintain a single lane prior to reaching the intersection; Garcia had a green light but nevertheless came to a full stop before proceeding through the intersection; after Garcia was positioned in front of the officer, Garcia continued to fail to maintain a single lane; and the officer was unsure of whether Garcia would attempt to flee because Garcia did not immediately pull over. *See generally Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018) ("In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred."). The officer's dash camera recording, wherein the traffic lights are visible but Garcia's initial traffic infractions are not, supports the officer's version of events immediately leading up to the initiation of the stop. After Garcia travels through the intersection, he can be seen on camera failing to maintain a single lane and failing to immediately pull over. In other words, "[t]here is no evidence that information beneficial to appellant's defense would have been discovered but for counsel's unprofessional errors." *See Adekeye v. State*, 437 S.W.3d 62, 71 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (concluding trial counsel's failure to obtain a full copy of the offense report, review photographs, interview possible witnesses, and request statements made by appellant did not constitute ineffective assistance).

We further note that Garcia admitted to being intoxicated; the cocaine was seen in plain view; and Garcia, though disclaiming ownership of the cocaine, has never disputed being in possession of cocaine. *See Castellano*, 49 S.W.3d at 576; *see, e.g., Ex parte Samal*, No. 02-21-00065-CR, 2021 WL 4101621, at *5–6 (Tex. App.—Fort Worth Sept. 9, 2021, no pet.) (mem. op., not designated for publication) ("In light of Samal's

confession, we cannot conclude that Kerr rendered ineffective assistance by not procuring independent testing.").

The record moreover supports the trial court's finding that Garcia was an undocumented immigrant and subject to deportation irrespective of any shortcoming on his trial counsel's part. *See Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021) ("[I]n cases in which we have been able to definitively determine, either that a defendant will not be deported (because he *is* a United States citizen), or that he is already unavoidably deportable regardless of the decision to plead guilty, we have found that the failure to admonish was harmless."); *State v. Guerrero*, 400 S.W.3d 576, 588–89 (Tex. Crim. App. 2013) (factoring into its ineffective assistance analysis that the appellant "was an undocumented immigrant and was deportable for that reason alone").

In summation, Garcia has not shown that the review of this evidence by his counsel would have produced a different result. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). We overrule this sub-issue.

### c. Conflict of Interest

When a defendant asserts that "ineffective assistance derived from a conflict of interest, the proper standard is that which the Supreme Court articulated in *Cuyler v. Sullivan*." *Acosta v. State*, 233 S.W.3d 349, 352–53 (Tex. Crim. App. 2007) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). "[T]hat is, the appellant must show that his trial counsel had an actual conflict of interest, and that the conflict actually colored counsel's

actions during trial." *Odelugo v. State*, 443 S.W.3d 131, 136 (Tex. Crim. App. 2014). "[A]n 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client." *Id.* (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). "[I]f 'no evidence has been presented on the issue' or in the event that 'the evidence relevant to that issue is in perfect equipoise,' the appellant's claim will fail." *Id.* at 136–37 (quoting *Broxton v. State,* 909 S.W.2d 912, 920 (Tex. Crim. App. 1995) (Clinton, J., dissenting)).

According to Garcia, a conflict of interest exists because Trevino was hired by Lozano to represent him, and therefore, Trevino's allegiance was to Lozano—not Garcia. However, Garcia never raised this issue in his petition for habeas corpus, and it cannot be asserted for the first time now. *See* TEX. R. APP. P. 33.1(a); *Ex parte Perez*, 536 S.W.3d 877, 880 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("In reviewing an order denying habeas relief, an intermediate court of appeals only reviews issues that were properly raised in the habeas petition and addressed by the trial court."); *see also Ex parte Martin*, No. 01-17-00025-CR, 2019 WL 2292631, at *12 (Tex. App.—Houston [1st Dist.] May 30, 2019, no pet.) (mem. op., not designated for publication) (overruling Martin's sixth issue of whether his trial counsel had a "conflict of interest," was "less motivated to represent Martin and, thus, provided ineffective assistance of counsel" because Martin asserted his issue for the first time on appeal). We overrule this sub-issue.

# V. JUDICIAL BIAS

By what we construe as Garcia's third issue, he claims the trial court committed structural error in its "arbitrar[y] refus[al] to consider" the relief requested. Structural error, which is subject to automatic reversal, "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself" and "render[s] a trial fundamentally unfair." *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) and *Rose v. Clark*, 478 U.S. 570, 577 (1986)). The United States Supreme Court has repeatedly held that a violation of the right to an impartial judge is a structural error that requires no harm analysis. *See Fulminante*, 499 U.S. at 309; *Tumey v. Ohio*, 273 U.S. 510 (1927). When a claim of judicial impartiality is raised, "we review the entire record to determine if it shows the judge's bias or prejudice denied the defendant due process." *Tovar v. State*, 619 S.W.3d 783, 792 (Tex. App.—San Antonio 2020, pet. ref'd). "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *see Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

As evidence of judicial bias, Garcia asserts the following:

At the hearings on August 29, 2018 and July 29, 2016, federal due-process deprivations occur[ed] as the presiding judge[15] was so biased by his inability to fashion a remedy for Appellant. That refusal to so consider

---

[15] The Honorable Bonner Dorsey, a visiting judge, presided over the July 29, 2016 and August 29, 2018 hearings. The record indicates that another visiting judge, the Honorable Romeo Flores, initially called the case on July 29, 2016, and briefly recessed proceedings after the parties' announcements were made. When the trial court reconvened, Judge Dorsey was presiding.

available remedies was "structural error," demonstrating that presiding judge's inability to be neutral and detached in assessing justice.

Garcia cites to *Brumit v. State* for the proposition that a "defendant is denied his due process rights when a trial court arbitrarily refuses to consider available statutory remedies." *See Brumit*, 206 S.W.3d at 645. In *Brumit*, at issue was whether the trial court imposed a predetermined sentence without considering the full range of punishment first. *Id.* Nonetheless, the court concluded "[t]he comments of the trial court here do not reflect bias, partiality, or that the trial judge did not consider the full range of punishment" and were "clearly distinguishable from those cases where appellate courts have found either partiality of the trial judge or that the trial judge imposed a predetermined sentence." *Id.*; *see also Liteky*, 510 U.S. at 555 (providing that judicial remarks may show bias "if they reveal an opinion that derives from an extrajudicial source" or "if they reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible").

In this case, the trial court did not "refus[e] to . . .consider available remedies" but rather denied habeas relief on the merits. Having affirmed the trial court's rulings regarding Garcia's ineffective assistance claims, we cannot say that the trial court's unfavorable rulings, without more, constituted judicial bias. *See Brumit*, 206 S.W.3d at 645; *Tovar*, 619 S.W.3d at 792 ("Unfavorable rulings do not alone show judicial bias or prejudice."). Inasmuch as Garcia challenges the trial court's legal conclusion that it was without jurisdiction to provide relief, such ruling appears rooted in an earnest, albeit incorrect, interpretation of the law[16]—not in a bias against Garcia, and it is clearly

---

[16] Garcia's brief acknowledges that this case presents a novel issue in that there is no caselaw concerning the application of article 11.072 where the defendant entered into and successfully completed a pretrial diversion agreement.

distinguishable from cases where courts have found judicial partiality. *See Liteky*, 510 U.S. at 555; *Tovar*, 619 S.W.3d at 792. We overrule Garcia's third issue.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

By what we construe as his fourth issue, Garcia argues the trial court's failure to respond to his "filed objections to the findings and requests, reminders and past-due notices of requests for more findings and conclusions" is "presumed harmful," and "the appropriate remedy is to abate this appeal, and direct the habeas court to make additional findings and conclusions responsive to Appellant's objections and requests." Garcia specifically asserts that the trial court failed to address any of his five constitutional claims in its findings of fact and conclusions of law, that he was "forced to guess the reasons the trial court ruled against him," and that the final order was "insufficient to allow [Garcia] to properly present his case to this [C]ourt." We disagree.

With respect to Garcia's five "constitutional claims," he cites the following cases: *Boykin v. Alabama*, 395 U.S. 238 (1969) (plea involuntariness); *Cuyler*, 446 U.S. at 348–49 (conflict of interest); *Kimmelman v. Morrison*, 477 U.S. 365 (1986) (failure to investigate); *Lee*, 137 S. Ct. at 1966 (immigration consequences); and *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018) (right to assist his counsel). However, Garcia's petition does not set forth all five grounds for relief. Instead, the arguments in his petition are limited to the following: (1) Garcia's trial counsel failed to adequately investigate his case (*Kimmelman*); and (2) Garcia's trial counsel affirmatively misadvised him regarding immigration consequences of his plea (*Lee*) and said failure rendered his plea involuntary, unknowingly, and unintelligently made (*Boykin*). Neither his original petition or

supplemented petition raise a conflict of interest (*Cuyler*) or breach of his sixth amendment right to assist his counsel (*McCoy*) claim. Garcia's *Cuyler* and *McCoy* claims are also notably absent from any hearing in the record. The trial court is under no obligation to address issues which have not been raised by Garcia in his petition or at the hearing; therefore, the absence of any findings or conclusions regarding Garcia's *McCoy* and *Cuyler* claims is not error. *See Ex parte Leachman*, 554 S.W.3d 730, 739 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (observing that the appellate court's jurisdiction is limited to reviewing issues "properly raised in the habeas petition").

Moreover, contrary to Garcia's arguments on appeal, the trial court's September 2018 order, as discussed *supra*, adequately addressed what was unequivocally raised: Garcia's *Lee* and *Kimmelman* claims. Although the trial court's findings are silent regarding Garcia's *Boykin* claim, we may defer to what undoubtably remains implicit: the success of Garcia's *Boykin* claim was predicated on the trial court finding that his trial counsel failed to adequately caution Garcia regarding the immigration consequences of his plea (*Lee*); in concluding otherwise, the trial court implicitly found against Garcia's *Boykin* claim. *See Ex parte Harrington*, 310 S.W.3d at 457.

Further, Garcia cites no caselaw, and we find none, in support of his subsidiary argument that the trial court's failure to respond to his objections to the trial court's written findings and request for more findings was mandatory or presumptively harmful. *See* TEX. R. APP. P. 38.1(i), 44.2. We overrule Garcia's last issue in both subparts.

33

## VII.  Conclusion

We affirm the trial court's September 2018 order denying Garcia relief under article 11.072.

CLARISSA SILVA
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed on the
21st day of December, 2021.