**Opinion issued August 29, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00824-CR**

———————————

## EX PARTE SARAH HARTSFIELD

---

**On Appeal from the 253rd District Court**
**Chambers County, Texas**
**Trial Court Case No. 23DCR0063**

---

## MEMORANDUM OPINION

Appellant Sarah Hartsfield is charged with murder and is facing up to life in prison. Hartsfield challenges the trial court's partial denial of her application for writ of habeas corpus in which she requested that her bond be reduced. Although the trial court reduced Hartsfield's bond following a hearing on her application, she argues the bond amount remains excessive. She requests that this Court "issue an order to the trial court to reduce her bail to $150,000 cash or surety bond."

We affirm.

## Background

On February 3, 2023, Sarah Hartsfield was indicted and arrested for killing her husband, Joseph Hartsfield.[1]  The indictment alleged that on or about January 7, 2023, Hartsfield "[i]ntentionally and knowingly cause[d] the death of an individual, namely Joseph Hartsfield, by a manner and means unknown to the grand jury." Hartsfield is incarcerated and awaiting trial in Chambers County.

The trial court initially set Hartsfield's bond at $5,000,000 "[p]ursuant to Article 17.40 of the Code of Criminal Procedure and for the safety of the victims and the public," subject to certain conditions including (1) "no[] contact or communicat[ion] with any witness, the complainant's family or any other person related to the case directly or indirectly or through a third person"; (2) "submit[ting] to a home curfew during all hours that . . . she is not actively involved in . . . her employment . . . except . . . [Hartsfield] shall be allowed to attend court proceedings"; (3) "refrain[ing] from the consumption of alcohol at all times"; (4) "refrain[ing] from the possession of any firearm or ammunition or be in any location where firearms are present"; (5) "refrain[ing] from all electronic communication"; (6) "obtain[ing] and wear[ing] . . . GPS . . ."; (7) "not . . . leav[ing] the State of Texas"; and (8) "surrender[ing] . . . her passport."

---

[1]     *See* TEX. PENAL CODE § 19.02 ("Murder").

2

**First Bond Hearing**

On February 9, 2023, Hartsfield filed a Motion to Reduce Bond, arguing that she "has substantial ties to the community" and that "[t]he current bond [amount] is excessive[.]" She requested that the trial court set a "reasonable" amount. During a hearing held on March 1, 2023, Hartsfield, appearing through teleconference, was formally arraigned on the indictment and she pleaded not guilty. Hartsfield's appointed attorney asked the trial court to set "a reasonable bond or a personal recognizance bond." The State opposed the Motion to Reduce Bond, arguing that Hartsfield "is a flight risk" because she "does not have ties to th[e] community [in Chambers County]."

Hartsfield testified that she was born and raised in Missouri. She lived in Belgium, Alaska, Maryland, Virginia, in Minnesota, and on and off in Texas since 1994, including in Killeen from 1994 to 1996, in Copperas Cove for six months, in Houston for six months, in Belton from 2014 to 2017, and most recently, since April 2022, in Beach City in Chambers County.

Hartsfield testified that the longest she has lived in one place is three years, and that was in Belton, Texas. She testified she has no family in Beach City. Although her oldest daughter, friends, and neighbors live in Belton in Bell County, Hartsfield acknowledged they were not present to testify they would be responsible for her, would allow her to live with them, or speak about her character to ensure she was not a flight risk.

Hartsfield testified that she "never, since retiring, had a plan to leave Texas." She does not have "any real connections outside of Texas," and her passport is expired. Hartsfield testified that she is a resident and registered voter of Chambers County. She retired from military service in April 2017 after twenty years of service, and she receives monthly military benefits for one hundred percent disability in the amount of $3,900. Hartsfield also receives a portion of her ex-husband Christopher Donohue's retirement in the amount of $1,000 every month.[2]

While Hartsfield testified she was not "able to receive [military] benefits if [she's] incarcerated[,]" during cross-examination, she conceded she was "certain" her "monthly statement" was "going into [her] account," stating, "I didn't testify I can't receive benefits . . . my understanding of the question was, do I have access to those benefits." She also testified she had executed the necessary paperwork to give someone "power of attorney over [her] bank accounts" to allow access. Hartsfield alleged, however, that the money she receives monthly is "spoken for by [her] mortgage and just maintaining the household."

Hartsfield stated that she sold her home in Belton to purchase her current home in Beach City, and that although there is equity in her Beach City home, she cannot sell the home or retrieve the equity without probate of the estate of her deceased husband, Joseph Hartsfield, and she does not have any other liquid assets.

---

[2] Hartsfield testified she was married four times prior to her current marriage to Joseph Hartsfield. Christopher Donohue was her third husband.

Hartsfield stated that a few months prior, she and her husband had "looked into selling [her] [current] home," but she was not "having someone look into selling it right now." The record reflects that in 2019, Hartsfield bought a home in Minnesota and she sold it in 2021 for a profit. She testified that she purchased the home possibly for "$143,000." When asked whether she had sold it for $310,000," she testified she could not recall, but she knows she "walked away with about 60, maybe $62,000."

Hartsfield testified she does not have felony criminal convictions and she has not been charged with failure to appear in court. She testified about a confrontation that led to her shooting and killing her then-boyfriend, David Bragg, in 2018. She had firearms in her car, and following a confrontation with Bragg, she shot him with her firearm outside their house. Hartsfield testified there was an investigation but it "was closed" in February 2019 and the "case was dismissed as a justifiable homicide based on self-defense."

Hartsfield also testified that her ex-husband, David George,[3] accused her of asking him "to kill" Donohue's wife, and that as a result, there is a protective order from Bell County against her, instructing her to stay away from Donohue and her children, Hannah and Emma Donohue. Hartsfield testified that George later

---

[3] David George was Hartsfield's fourth husband.

retracted his accusation, which she claims he made in retaliation for her not "tak[ing] him back."

Hartsfield testified that she had spoken with three bail bondsmen, who advised her that she needed to provide ten percent of the bond amount, and they were not able to help "based on [her] financial circumstances." Hartsfield testified that she was not able to pay $500,000 to satisfy the $5,000,000 bond. Hartsfield stated that she "could scrape together about $1,000" but she "would be cutting it very close to not being able to meet [her] financial commitments, just to sustain the house and automobile insurance, just run-of-the-mill monthly payments that are already set in place."

After hearing Hartsfield's testimony and the argument of counsel, the trial court reduced Hartsfield's bond from $5,000,000 to $4,500,000.[4] The trial court signed an Order on Bond, stating the reduced bond amount and noting that "all other previous bond conditions remain[ed] in place."

Hartsfield, acting pro se, mailed letters to the trial court, dated April 16, 2023 and April 19, 2023, asking for "alternate counsel" and stating she "ha[d] met with and [is] looking to retain [her] own attorney." [5] Hartsfield also filed an Application

---

[4] Only Hartsfield testified at the hearing.

[5] On April 27, 2023, Hartsfield's appointed counsel filed a Motion to Withdraw as Counsel. Hartsfield's newly retained attorneys filed a Motion to Substitute Counsel. On June 29, 2023, the trial court granted the Motion to Substitute.

for Writ of Habeas Corpus Seeking Bail Reduction on April 24, 2024, arguing that her bond was "beyond [her] financial means," and requesting "a hearing to reduce the amount of said bond to a reasonable amount in order . . . [for her to] have an opportunity to obtain [her] release from incarceration."

**Second Bond Hearing**

On April 27, 2023, Hartsfield's appointed counsel filed a Second Motion to Reduce Bond, stating that Hartsfield "has substantial ties to the community[,]" "[t]he current bond is excessive," "and her financial situation ha[d] substantially changed." Counsel requested that the trial court "set a bond in an amount that is reasonable."

On May 22, 2023, the trial court held a hearing on the Second Motion to Reduce Bond. Hartsfield asked the trial court for a "PR bond with conditions" or a "reasonable amount." Hartsfield appeared in person at the hearing and testified that she does not have the ability to make bond and does not have contact with anyone who can assist her with making the bond. Hartsfield testified that her incarceration caused a drop in her military benefits in that she is receiving less than $200 a month whereas before, she was receiving $4,000 a month.[6] She testified that as another source of income, she "ha[s] a retirement benefit from [her] ex-husband [Donohue], [in the amount of $1,000 a month,] but those checks are actual physical checks [from

---

[6] Hartsfield's attorney informed the court that the "protocol is that [his client's military benefits] would reduce after [an incarceration period of] 60 days" although he did not know whether the checks had in fact been reduced.

the U.S. Treasury] and they have not been cashed." Hartsfield testified that she "ha[s] a mortgage" "[that has] not been paid[,]" and a "car note."

Hartsfield testified that in 1995, she was arrested in Harris County for family violence involving the assault of Michael Traxler, her then-boyfriend, but she testified the case had been dismissed. When asked again about the death of Bragg and her prior testimony that the case had been dismissed, Hartsfield acknowledged that she is "still under investigation" for his murder.

Captain Todd Harris, Jail Administrator for the Chambers County Sheriff's Office, testified that while incarcerated, Hartsfield "mutilated her . . . wrist with a . . . metal piece, and cut her wrist, causing herself to bleed." Consequently, Hartsfield was "under suicide watch for about 24 hours . . . ." Other than this incident, Hartsfield had not presented herself as a threat during pretrial detention.

Floyd Johnston, the uncle of Hartsfield's deceased husband, Joseph Hartsfield, also testified. Johnston testified that Joseph told him he was afraid of Hartsfield. Johnston further testified that their marriage was not going well, and Joseph told him that he "was afraid of what [Hartsfield] might do when he tried to leave." Johnston stated this "really concerned" him because this was not just talking about someone "throw[ing] your clothes out in the yard," this "was different."

During closing arguments, Hartsfield's appointed attorney asked the court to grant a "PR (personal release) bond with conditions" or, alternatively, "a reasonable bond that [Hartsfield] can make . . . ." In response, the State argued

8

> The burden is on the defense, who filed the motion for the bond reduction. There has not been one bondsman to come up here saying what amount of bond they would make. There's not been one person to come up here and testify how much collateral she has and whether that bondsman would take that collateral. Instead, it's been an attack on the State and our evidence. But we're not a trial at this point . . . .

The State further argued that Hartsfield "is dangerous[,] . . . a threat to society, . . . under investigation for another murder out of state," and "has no ties to this county." The State concluded that "[Hartsfield's] bond is reasonable . . . and should not be lowered." (3 RR 56) At the conclusion of the hearing, the trial court reduced Hartsfield's bond from $4,500,000 to $4,000,000, subject to the previous bond conditions.

Hartsfield filed another Application for Writ of Habeas Corpus Seeking Bail Reduction on June 30, 2023, alleging she was illegally confined and restrained of liberty by the Chambers County Sheriff because the bond was excessive, oppressive, beyond her financial means, and in violation of her constitutional rights. Hartsfield requested the trial court to "reduce the amount of bond to a reasonable amount." In response, the State filed a Motion to Quash Hartsfield's bail application. On July 10, 2023, Hartsfield filed a First Amended Application for Writ of Habeas Corpus Seeking Bail Reduction, again requesting the trial court to "reduce the amount of bond to a reasonable amount."

**Third Bond Hearing**

9

On October 6, 2023, during a hearing on Hartsfield's First Amended Application for Writ of Habeas Corpus Seeking Bail Reduction, Hartsfield's retained attorney asked the trial court to reduce Hartsfield's bond from $4,500,000 to $250,000. Hartsfield, appearing in person, testified she was no longer receiving a retirement check from the Department of Defense. Hartsfield testified that without that retirement check, her income was approximately $1,100 a month. Hartsfield testified that two of her four vehicles had been repossessed and that she was certain it had impacted her credit rating. She testified the adverse effects on her credit rating "would limit her ability to borrow money to post bail." Hartsfield testified that her homeowners' association fees, mortgage, and credit card debt had gone unpaid. Hartsfield testified that she had no assets left outside of her home and two vehicles, a Dodge 2500 Pickup and a Nissan Sentra.

On cross, Hartsfield testified she had been in Chambers County less than a year when she went to jail, and she has no family in the Chambers County. She acknowledged that she "moved quite a bit." Hartsfield testified that on July 19, 2023, she called an individual named Clayton at the Chambers County Bail Bonds, whom she told something to the "effect" that she has "never been in trouble," they have "turned this into a circus," and she's "never had so much as a speeding ticket." She also admitted telling Clayton she could raise $200,000 to make her bond. When asked what had changed between then and now, Hartsfield testified, "my credit."

10

Hartsfield's counsel cited multiple cases in support of the proposition that Hartsfield's bail was excessive. Citing *Ludwig v. State*,[7] counsel argued that the Court of Criminal Appeals "has yet to condone a bail amount even approaching seven figures in a capital case, and it's referring to capital murder." Counsel requested that Hartsfield's bond be set at $250,000 "based on her ability to make the bail" and the other relevant factors. The State requested that Hartsfield's current "bond stay in place," remarking that that this was "the third or fourth different story [Hartsfield had] given" to the Court and she was "playing games." The State argued that contrary to Hartsfield's present testimony regarding her financial circumstances, Hartsfield had "told a bonding company that she could come up with $200,000 to make a bond." The State further argued Hartsfield was a "danger" and did "not need to be out on the street." The State asserted that Hartsfield moves frequently and "she never stays anywhere very long" and there is "probably a reason for that."

At the conclusion of the hearing, the trial court, remarking on Hartsfield's testimony "that she could make or pay $200,000," reduced Hartsfield's bond from $4,000,000 to $2,000,000, subject to the previous bond conditions. The trial court stated: "Based on the testimony, I find that there is testimony she could make or pay 200,000. I'm going to set the bond at 2-million. I think she can possibly make that,

---

[7]     812 S.W.2d 323 (Tex. Crim. App. 1991) (finding $1,000,000 bail excessive where testimony reflected that "at best appellant could make a bail amount of $100,000[]").

11

if she wants to. So the bond is reduced to 2-million with the conditions heretofore set." On the same date, the trial court signed orders consistent with its ruling on the record. The trial court ordered that "[p]ursuant to Article 17.40 of the Code of Criminal Procedure and for the safety of the victims and the public," Hartsfield's "bond is set at $2,000,000." The order also listed the same bond conditions previously imposed.

In her habeas petition filed in this Court, Hartsfield argues the trial court abused its discretion in "refusing to lower [her] bond and set a reasonable bond in her case." She argues the bond set in the sum of $2,000,000 is "clearly excessive, resulting in [her] being effectively denied bail." She requests that this Court reduce her bail to $150,000 and remand to the trial court for imposition of reasonable bond conditions.[8]

## Standard of Review

We review a trial court's decision to grant or deny habeas corpus relief for abuse of discretion. *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (stating that "the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail will not be disturbed by this Court in the absence of an abuse of discretion") (internal quotation marks omitted); *see also Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for

---

[8] While she challenges the amount of the bond set, Hartsfield does not challenge the bond conditions previously set by the trial court.

12

abuse of discretion); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same). When a habeas appeal pertains to pretrial bail, we "measure the trial court's ruling against the relevant criteria by which the ruling was made." *Id.* at 593; *see also Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) ("Habeas courts determine the bearing of the evidence on the relevant bail criteria *only* in the first instance. On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion.") (emphasis in original) (citing TEX. CODE CRIM. PROC. art. 17.15; TEX. CONST. art. 1, §§ 11, 13).

This Court will disturb the trial court's ruling only if it falls outside the zone of reasonable disagreement. *See Ex parte Brooks*, 376 S.W.3d 222, 225 (Tex. App.—Fort Worth 2012, pet. ref'd) (Gabriel, J., dissenting). "To determine whether the trial court abused its discretion [in ruling on a request to reduce bail], we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Id.* In reviewing a trial court's ruling on a habeas claim, we view the record and evidence in the light most favorable to the court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021) (citing *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)). "The mere fact that a trial court may decide a matter within its discretion differently than an appellate court would in a similar circumstance does

13

not demonstrate that an abuse of discretion has occurred." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). It is the appellant's burden to establish that the trial court abused its discretion in its bail determination. *Ex parte Rubac*, 611 S.W.2d at 849; *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd) ("The burden is on the accused to prove that bail is excessive.").

## Applicable Law

The United States and Texas Constitutions protect the right to be free from excessive bail. U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 11. The primary purpose of bail is to secure the presence of the defendant in court for trial. *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston 14th Dist.] 2016, no pet.). "Determining the appropriate bail amount is a balancing act 'between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial." *Ex parte Cardenas*, 557 S.W.3d 722, 730 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.).

In considering whether the trial court abused its discretion in reducing Hartsfield's bond to $2,000,000, we apply the factors enumerated in Article 17.15 of the Code of Criminal Procedure. S*ee Ex parte Perez*, Nos. 02-10-00450-CR, 02-

14

10-00451-CR, 2011 WL 255292, at *1–4 (Tex. App.—Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (considering Article 17.15's rules when defendant requested reduction in bail); *Ex parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1–3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (same); *Ex parte Gomez-Herrada*, No. 07-20-00177-CR, 2020 WL 7214293, at *5 (Tex. App.—Amarillo Dec. 7, 2020, no pet.) (mem. op., not designated for publication) (same). Article 17.15 instructs trial courts to consider the following in setting a defendant's amount of bail:

1. The bail and any conditions shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PRO. art. 17.15

In addition to the Article 17.15 factors, trial courts also may consider the following factors in setting the amount of bail or granting a request for personal bond:

15

1.  the accused's work record;

2.  the accused's family and community ties;

3.  the accused's length of residency;

4.  the accused's prior criminal record;

5.  the accused's conformity with previous bond conditions;

6.  the existence of other outstanding bonds, if any; and

7.  aggravating circumstances alleged to have been involved in the charged offense.

*Smith v. State*, 829 S.W.2d 885, 887–88 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d at 849–50)).

The trial court was charged with considering these factors and the rules in Article 17.15 in its bond determination. We review the same bail criteria to ensure the court did not abuse its discretion. "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Ex parte Dixon*, 2015 WL 5453313, at *2 (citing TEX. CODE CRIM PROC. art. 17.15; TEX. CONST. art. I, §§ 11, 13). We determine whether a bail amount is reasonable "on a case-by-case basis, weighing factors unique to each defendant and each offense." *Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Beard*, 92 S.W.3d at 571 (noting case law is "of relatively little value in addressing the ultimate question of the appropriate amount of bail" because bail "cases are so individualized that generalization from results reached in others is difficult").

**Discussion**

16

Acknowledging the relevant factors trial courts consider in setting bond, Hartsfield argues the trial court "used bail as an instrument of oppression, irrespective of whatever subjective intention the court may have had." She argues that bail was excessive because it is "incommensurate with the offense charged, not consistent with precedent, and clearly beyond the defendant's financial need." We consider the relevant factors below.

## A.    Sufficiently High Bail

We first consider whether the bail is "sufficient to give reasonable assurance that the undertaking will be complied with." Here, the $2,000,000 bail is sufficiently high to give reasonable assurance that Hartsfield will appear in court. *See* TEX. CODE CRIM. PRO. art. 17.15 (stating bail and conditions "shall be sufficient to give reasonable assurance that the undertaking will be complied with").

## B.    Whether Bail is Oppressive and the Ability to Pay It

The second factor, the requirement that bail not be used as "an instrument of oppression," and the fourth factor, the ability to make bail, are related. We thus consider them together.

As she does on appeal, Hartsfield argued in her original Application for Writ of Habeas Corpus and First Amended Application that her bond was "excessive, oppressive and beyond [her] financial means," and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, Article 1, Sections 11 and 13 of the Texas Constitution, and Articles 1.07, 1.09, and 17.15 of the Texas

Code of Criminal Procedure. She argues that the bond is "clearly excessive, resulting in [her] being effectively denied bail." She contends the trial court "effectively used bail as an instrument of oppression, irrespective of whatever subjective intentions the court may have had." According to Hartsfield, "if bail is excessive, then it has been used as an instrument of oppression by the trial court." We disagree that this is an accurate rendition of the law.

Bail set in a particular amount "becomes oppressive when it is based on the assumption that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated." *Ex parte Moreno*, No. 01-20-00312-CR, 2021 WL 4733239, at *9 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, no pet.) (mem. op., not designated for publication) (citing *Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.); *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating that where bail amount was set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression"). We thus consider whether the record reflects the trial court made its decision regarding bail "for the purpose of forcing [Hartsfield] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Hartsfield argues that "the sum of $2,000,000 is clearly excessive" and "does not fall within the zone of reasonable disagreement." She argues "[s]he has no hope of posting the standard ten percent fee" of a $2,000,000 bond because she "is a

18

miliary veteran living on a disability pension." The State responds that the inability of the accused to pay the amount of bail assessed does not render any amount of bail excessive. And that while indigence is a circumstance to consider, it is not controlling.

The record reflects that Hartsfield was receiving monthly military benefits in the amount of $3,900 and $1,000 from Donohue's retirement. The record further reflects that Hartsfield owns a home and owned four vehicles, two of which were repossessed. Hartsfield also testified that about two months prior to the hearing, she communicated with a bail bondsman and told him she could raise $200,000 to make her bond. Believing Hartsfield could make bond based on that testimony, the trial court stated, "I think [Hartsfield] can possibly make that, if she wants to. So the bond is reduced to 2-million with the conditions heretofore set." The trial court thus evaluated Hartsfield's "ability to make bail" along with all other bail criteria in making its final determination. There is no indication in the record that the trial court utilized bail as means to oppress Hartsfield or to prolong her incarceration. *See Ex parte Dupuy*, 498 S.W.3d at 233 (holding there was no evidence trial court had set bail to keep defendant incarcerated and noting the trial court actually had lowered defendant's bail in each case); *Ex parte Nimnicht*, 467 S.W.3d at 70 (same); *cf. Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (trial court stated, "I'd rather see him in jail than to see someone's life taken.").

Although Hartsfield subsequently testified that she was no longer able to raise

19

"$200,000" because of her "credit," this testimony alone does not render the bond amount excessive. *See Ex parte Childers*, No. 01-21-00493-CR, 2022 WL 2976545, at *6 (Tex. App.—Houston [1st Dist.] July 28, 2022, no pet.) (mem. op., not designated for publication) (appellant "did not establish either that his and his family's funds had been exhausted or that he unsuccessfully attempted to make bail") (citing *Ex parte Moreno*, 2021 WL 4733239, at *12) ("General references to an applicant's inability to make bail does not render the bail amounts set by the trial court excessive or justify a reduction of the bail amounts."). Hartsfield testified that her credit rating "would make it difficult" to secure a loan, but she did not testify that she had attempted to secure a loan and had been denied due to her credit rating. Hartsfield did not explain how or why her "credit" prevented her from obtaining funds to satisfy the bond, nor did she provide sufficient evidence about her and her family's specific assets or financial resources. She also did not explain what efforts, if any, she had undertaken to furnish bail in the amount set by the trial court. *Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) ("Generally, to show that he cannot make bail, a defendant must demonstrate that his funds and his family's funds have been exhausted.") (citation omitted); *Ex parte Martinez*, No. 10-17-00420-CR, 2018 WL 1958016, at *3 (Tex. App.—Waco Apr. 25, 2018, no pet.) (mem. op., not designated for publication) (affirming denial of writ requesting reduction in bail amount and stating appellant did not "detail either his or his family's specific assets

20

and financial resources, nor did he explain what efforts, if any, were made to furnish the bond") (quoting citation omitted).

Nor does Hartsfield's reduction in her military benefits automatically establish the bond amount was excessive. *Ex parte Bogia*, 56 S.W.3d at 837 (stating that an "accused's ability or inability to make bond is relevant, but not controlling") (citing *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)). When considering whether a particular bail amount is reasonable, Article 17.15 requires consideration of a defendant's ability to make bail. *Ex parte Martinez*, 2018 WL 1958016, at *3. But an "inability to make bail, even to the point of indigence, does not control over the other factors." *Id.* (quoting *Ex Parte Brossett*, 524 S.W.3d 213, 276 (Tex. App.—Waco 2016, pet. ref'd). The "ability to make bail is to be regarded, and proof may be taken upon this point" as one of many factors to be considered by the trial court. *See* TEX. CODE CRIM. PRO. art. 17.15; *see also Ex parte Martinez*, 2018 WL 1958016, at *3 (holding trial court did not abuse discretion in denying retired military veteran's request to reduce bail despite appellant's and sister's testimony that he could not make amount of bail and taking into consideration other factors in affirming). Indeed, "[i]f the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Ex parte Nimnicht*, 467 S.W.3d at 68. Further, as the Court of Criminal Appeals has clarified, the Legislature, in placing "a mandatory duty" on

21

trial courts to consider the safety of the community when fixing bail, "requires trial courts to consider a fact that is not related to the amount the defendant can afford to pay." *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at *1 (Tex. Crim. App. May 16, 2012) (not designated for publication) (citation omitted).

While Hartsfield testified that she retired after serving in the military for twenty years and was receiving a reduced pension due to her incarceration, the trial court also heard testimony that Hartsfield had two cars, that she had realized a profit of approximately $62,000 in 2021 after selling a house in Minnesota, and that about two months before the hearing, she told a bondsman she could come up with $200,000 to make bond. While Hartsfield testified at the hearing that she no longer could raise that money, the trial court did not have corroborating evidence to consider because no one testified on Hartsfield's behalf regarding her finances and in support of her testimony that she could no longer obtain the money to post bail. Having only Hartsfield's testimony to consider, the trial court was assigned the task of determining whether her contentions were credible. *Ex parte Reyes-Martinez*, 653 S.W.3d 273, 280 (Tex. App.—Austin 2022, no pet.) ("The trial court is the exclusive judge of witness credibility, and we afford it considerable discretion in making those challenging determinations.") (internal quotation omitted).

The State argued that Hartsfield lacked credibility because this was "the third or fourth different story [Hartsfield had] given" about her finances and she was "playing games." The record reflects that during the hearing, Hartsfield appeared to

evade the prosecutor's questions concerning her prior conversation with a bondsman. When asked if she had spoken to a bondsman about her ability to post bond, she responded, "possibly." When the prosecutor asked if she wanted him to "play the phone call to refresh [her] memory" that she had called the bondsman, she testified, "If you say I did, I did. I don't recall." Confronted with the call and her statement to the bondsmen that she could "raise $200,000 to make" the bond, Hartsfield, who moments earlier had testified she could not recall the call, testified, "Again, then, when I made that call, I could have raised that money" but "I cannot now" due to "my credit." The trial court, giving credence to the conversation between Hartsfield and the bail bondsman and based on Hartsfield's testimony that "she could make or pay $200,000," entered an order reducing her bond from $4,000,000 to $2,000,000. To the extent the trial court did not find Hartsfield's contentions otherwise to be credible, we afford the trial court wide discretion in assessing her credibility. *See Ex parte Duque*, 540 S.W.3d 136, 145 (Tex. App.—Houston [1st Dist.] 2017, pet. struck) ("In habeas proceedings, '[v]irtually every fact finding involves a credibility determination,' and 'the fact finder is the exclusive judge of the credibility of the witnesses.'") (quoting *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996)); *see Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (observing that bail cases involve "the difficult task of weighing the specific facts of a case against many, often contravening factors, and

23

often in the face of scant evidence").

We further note that even if the testimony did not reflect that Hartsfield had the ability to make the bail amount, there is nothing in the record to suggest the trial court set the amount for the express purpose of forcing her to remain incarcerated. *Ex parte Grant*, No. 01-23-00889-CR, 2024 WL 924433, at *5 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, no pet.) (mem. op., not designated for publication) (noting "nothing in our record shows that the trial court intentionally set a high bail amount to keep [appellant] incarcerated"); *Ex parte Moreno*, 2021 WL 4733239 (affirming trial court's denial to lower bail from $1,000,000 in capital murder case despite appellant's arguing she could not afford bail because she was indigent).

Because the trial court took into consideration Hartsfield's ability to make bail and the trial court did not use bond as an instrument of oppression, the second and fourth factors do not weigh in favor of Hartsfield's requested relief.

## C.   The Nature of the Offense

The third factor contemplates "the nature of the offense and the circumstances under which it was committed." The nature of the offense and the length of possible sentence are key considerations in determining the reasonableness of bail. *Ex parte Rubac*, 611 S.W.2d at 849 (highlighting these as primary factors); *see also Ex parte Estrada*, 640 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (same). Hartsfield is charged with the offense of intentional murder, a first-degree felony, and faces a maximum punishment range of five to ninety-nine years'

24

confinement or life imprisonment. *See* TEX. PENAL CODE §§ 19.02, 12.32(a). This range of punishment, should Hartsfield be found guilty, supports the trial court's ruling.

## D.     Safety of the Community

In making its bond determination, the trial court had to consider the future safety of the community. Hartsfield has been charged with murder for the death of her husband. The trial court heard testimony from the deceased's uncle, who testified that Joseph Hartsfield told him he was afraid of Hartsfield. While Hartsfield has not been convicted of a felony, her testimony reflects that she has been accused of assaulting a man, shooting and killing another man, and organizing an attempt to kill Donohue's wife. There is also a protective order that prevents Hartsfield from seeing Donohue and her two daughters. There is thus at least some evidence in the record, including Hartsfield's alleged history of violence and domestic disputes, to suggest that Hartsfield poses a threat to the community. This factor supports the trial court's bond decision. *See Burns v. State*, No. 05-23-01013-CR, 2024 WL 909840, at *5 (Tex. App.—Dallas Mar. 4, 2024, no pet.) (mem. op., not designated for publication) ("Considering the seriousness and violence of the charged offense [of burglary of habitation with intent to commit murder], the trial court could have concluded appellant posed a threat to the community . . . ." and noting that "this factor weighs against a determination the amount of bail was excessive.").

## E.     Other Factors

Trial courts may also consider factors such as the accused's work record, her family and community ties, her length of residence, her prior criminal record, her conformity with previous bond conditions, the existence of other outstanding bonds, if any, and aggravating circumstances allegedly involved in the charged offense. *Smith*, 829 S.W.2d at 887–88 (citing *Ex parte Rubac*, 611 S.W.2d at 849). Hartsfield does not address these factors in her brief. She only argues that the State did not "provide any evidence that [she] has ever failed to appear for a court proceeding."

Hartsfield is a retiree from the military since 2017, and prior to being arrested, she was not employed. The record reflects that Hartsfield had no significant ties to the community. She was born in Missouri and has since lived in six different states. Hartsfield has only lived in Chambers County since April 2022, less than one year before her arrest on February 3, 2023. Hartsfield's only tie to the community is being a resident and registered voter of Chambers County. Hartsfield does not have any family residing in Chambers County. No one testified on Hartsfield's behalf at the bond hearings to say that they would be responsible for her, would allow her to reside with them, or to speak about her character to ensure that she was not a flight risk. These facts do not favor further reduction in bond. *Compare Ex parte Estrada*, 640 S.W.3d 246 at 253 (several factors "favor[ed] a lower, more achievable bail amount," such as appellant had significant ties to area, always lived in Texas, maintained employment, and appellant's family members testified at bail hearing

that they would ensure conditions set by court would be followed, and appellant planned to reside with family upon release from custody).

Given our analyses of the Article 17.15 rules and the supplemental factors, we find the trial court weighed the relevant factors and properly exercised its discretion in refusing to further lower Hartsfield's bond.

## Conclusion

We conclude the trial court did not abuse its discretion in reducing Hartsfield's bond to $2,000,000. We thus affirm the trial court's October 6, 2023 order.[9]

## PER CURIAM

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[9] While Hartsfield previously requested alternative relief of personal recognizance bond, she did not request such relief in the application for writ of habeas corpus from which she appeals. Hartsfield only requested reduction of the bond amount from $4,000,000 to $250,000. The trial court partially granted the relief sought, reducing the bond to $2,000,000.